Charles E. **WILLIAMS**, Appellant,

v.

**HOWARD JOHNSON'S RESTAURANT,**
**Russell V. Keys and Mary Barnes,**
**Appellees.**

**No. 7867.**

United States Court of Appeals
Fourth Circuit.

Argued June 15, 1959.

Decided July 16, 1959.

Charles E. Williams, Lexington, Va., pro se.

James H. Simmonds, Arlington, Va. (Howard M. Murphy, Arlington, Va., on brief), for appellees.

Before SOBELOFF, Chief Judge, and SOPER and HAYNSWORTH, Circuit Judges.

SOPER, Circuit Judge.

Charles E. Williams, an attorney in the Internal Revenue Service of the United States, brings this suit on his own behalf and on behalf of all others similarly situated against Howard Johnson's Restaurant in the City of Alexandria, Virginia, complaining that he was wrongfully refused service by the restaurant on the morning of April 20, 1958, because he is a Negro. He seeks a declaratory judgment that his exclusion on racial grounds amounted to discrimination against a person moving in interstate commerce and also interference with the free flow of commerce in violation of the Constitution of the United States, as well as a violation of the Civil Rights Acts of 1875, 18 Stat. 335. He prays for an injunction restraining the defendant from denying him and persons similarly situated access to the restaurant and also a money penalty for the infraction of the statute. On motion of the defendant his suit was dismissed by the District Court. Notwithstanding the substantial inconvenience and embarrassment to which persons of the Negro race are subject in the denial to them of the right to be served in public restaurants, the dismissal of the suit was in accord with the decisions of the Supreme Court of the United States and other Federal courts.

Sections 1 and 2 of the Civil Rights Act of 1875, upon which the plaintiff's position is based in part, provided that all persons in the United States should be entitled to the full and equal enjoyment of accommodations, advantages, facilities and privileges of inns, public conveyances and places of amusement, and that any person who should violate this provision by denying to any citizen the full enjoyment of any of the enumerated accommodations, facilities or privileges should for every such offense forfeit and pay the sum of $500 to the person aggrieved. The Supreme Court of the United States, however, held in Civil Rights Cases, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835, that these sections of the Act were unconstitutional and were not authorized by either the Thirteenth or Fourteenth Amendments of the Constitution. The Court pointed out that the Fourteenth Amendment was prohibi-

tory upon the states only, so as to invalidate all state statutes which abridge the privileges or immunities of citizens of the United States or deprive them of life, liberty or property without due process of law, or deny to any person the equal protection of the laws; but that the amendment did not invest Congress with power to legislate upon the actions of individuals, which are within the domain of state legislation. The Court also held that the question whether Congress might pass such a law in the exercise of its power to regulate commerce was not before it, as the provisions of the statute were not conceived in any such view (109 U.S. 19, 3 S.Ct. 27). With respect to the Thirteenth Amendment, the Court held that the denial of equal accommodations in inns, public conveyances and places of amusement does not impose the badge of slavery or servitude upon the individual but, at most, infringes rights protected by the Fourteenth Amendment from state aggression. It is obvious, in view of this decision, that the present suit cannot be sustained by reference to the Civil Rights Act of 1875.[1]

The plaintiff concedes that no statute of Virginia requires the exclusion of Negroes from public restaurants and hence it would seem that he does not rely upon the provisions of the Fourteenth Amendment which prohibit the states from making or enforcing any *law* abridging the privileges and immunities

of citizens of the United States or denying to any person the equal protection of the law. He points, however, to statutes of the state which require the segregation of the races in the facilities furnished by carriers and by persons engaged in the operation of places of public assemblage;[2] he emphasizes the long established local custom of excluding Negroes from public restaurants and he contends that the acquiescence of the state in these practices amounts to discriminatory state action which falls within the condemnation of the Constitution. The essence of the argument is that the state licenses restaurants to serve the public and thereby is burdened with the positive duty to prohibit unjust discrimination in the use and enjoyment of the facilities.

This argument fails to observe the important distinction between activities that are required by the state and those which are carried out by voluntary choice and without compulsion by the people of the state in accordance with their own desires and social practices. Unless these actions are performed in obedience to some positive provision of state law they do not furnish a basis for the pending complaint. The license laws of Virginia do not fill the void. Section 35-26 of the Code of Virginia, 1950, makes it unlawful for any person to operate a restaurant in the state without an unrevoked permit from the Commis-

---

1. Even if the Act of March 1, 1875, were valid, it would not support the plaintiff's case since it covers only *inns*, public conveyances and places of amusement. It has been held in Virginia, Alpaugh v. Wolverton, 184 Va. 943, 36 S.E.2d 906, in a case which did not involve race relations, that a restaurant owner is not an innkeeper charged with the common-law duty to serve everyone who applies. The Court said at page 948 of 184 Va., at page 908 of 36 S.E.2d:

"A restaurant, on the other hand, is an establishment where meals and refreshments are served. 28 Am.Jur., Innkeepers, § 10, p. 545; 43 C.J.S., Innkeepers, § 1, subsec. b, p. 1132.

"The proprietor of a restaurant is not subject to the same duties and responsibilities as those of an innkeeper, nor is he

entitled to the privileges of the latter. 28 Am.Jur., Innkeepers, § 120, p. 623; 43 C.J.S., Innkeepers, § 20 subsec. b, p. 1169. His rights and responsibilities are more like those of a shopkeeper. Davidson v. Chinese Republic Restaurant Co., 201 Mich. 389, 167 N.W. 967, 969, L.R.A.1918E, 704. He is under no common-law duty to serve everyone who applies to him. In the absence of statute, he may accept some customers and reject others on purely personal grounds. Nance v. Mayflower Tavern, 106 Utah 517, 150 P.2d 773, 776; Noble v. Higgins, 95 Misc. 328, 158 N.Y.S. 867, 868."

2. See Code of Virginia, 1950, Title 56, §§ 196, 325, 326, 390, 396; Title 18, §§ 327, 328.

sioner, who is the chief executive officer of the State Board of Health. The statute is obviously designed to protect the health of the community but it does not authorize state officials to control the management of the business or to dictate what persons shall be served. The customs of the people of a state do not constitute state action within the prohibition of the Fourteenth Amendment. As stated by the Supreme Court of the United States in Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 842, 92 L.Ed. 1161:

> "Since the decision of this Court in the Civil Rights Cases, 1883, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835, the principle has become firmly embedded in our constitutional law that the action inhibited by the first section of the Fourteenth Amendment *is only such action as may fairly be said to be that of the States.* That Amendment erects no shield against merely private conduct, however discriminatory or wrongful." (Emphasis supplied.)

The plaintiff makes the additional contention based on the allegations that the defendant restaurant is engaged in interstate commerce because it is located beside an interstate highway and serves interstate travelers. He suggests that a Federal policy has been developed in numerous decisions which requires the elimination of racial restrictions on transportation in interstate commerce and the admission of Negroes to railroad cars, sleeping cars and dining cars without discrimination as to color; and he argues that the commerce clause of the Constitution (Article I, Section 8, Clause 3), which empowers Congress to regulate commerce among the states, is self-executing so that even without a prohibitory statute no person engaged in interstate commerce may place undue restrictions upon it.

The cases upon which the plaintiff relies in each instance disclosed discriminatory action against persons of the colored race by carriers engaged in the transportation of passengers in interstate commerce. In some instances the carrier's action was taken in accordance with its own regulations, which were declared illegal as a violation of paragraph 1, section 3 of the Interstate Commerce Act, 49 U.S.C.A. § 3(1), which forbids a carrier to subject any person to undue or unreasonable prejudice or disadvantage in any respect, as in Mitchell v. United States, 313 U.S. 80, 61 S.Ct. 873, 85 L.Ed. 1201, and Henderson v. United States, 339 U.S. 816, 70 S.Ct. 843, 94 L.Ed. 1302. In other instances, the carrier's action was taken in accordance with a state statute or state custom requiring the segregation of the races by public carriers and was declared unlawful as creating an undue burden on interstate commerce in violation of the commerce clause of the Constitution, as in Morgan v. Com. of Virginia, 328 U.S. 373, 66 S.Ct. 1050, 90 L.Ed. 1317; Williams v. Carolina Coach Co., D.C.Va., 111 F.Supp. 329, affirmed 4 Cir., 207 F.2d 408; Flemming v. S. C. Elec. & Gas Co., 4 Cir., 224 F.2d 752; and Chance v. Lambeth, 4 Cir., 186 F.2d 879.

■■  In every instance the conduct condemned was that of an organization directly engaged in interstate commerce and the line of authority would be persuasive in the determination of the present controversy if it could be said that the defendant restaurant was so engaged. We think, however, that the cases cited are not applicable because we do not find that a restaurant is engaged in interstate commerce merely because in the course of its business of furnishing accommodations to the general public it serves persons who are traveling from state to state. As an instrument of local commerce, the restaurant is not subject to the constitutional and statutory provisions discussed above and, thus, is at liberty to deal with such persons as it may select. Our conclusion is, therefore, that the judgment of the District Court must be affirmed.

Affirmed.