**Brennie E. HACKLEY, Jr., et ux.**

**v.**

**ART BUILDERS, INC., Ward & Bosely Co., Inc., Harford County Metropolitan Commission, County Commissioners of Harford County, Maryland, Colonel Roy Muth, et al.**

Civ. No. 11807.

United States District Court
D. Maryland.

Jan. 5, 1960.

Charles P. Howard, Jr., Baltimore, Md., for plaintiffs.

William S. James, Bel Air, Md., and Richard W. Case, Baltimore, Md., for Harford Co. Metropolitan Commission.

Robert H. Archer, Bel Air, Md., and Richard W. Case, Baltimore, Md., for County Commissioners of Harford County.

Richard W. Case, Edward O. Clarke, Jr., Roger D. Redden and Smith, Somerville & Case, Baltimore, Md., for Ward & Bosely Co., Inc. and Art Builders, Inc.

George Cochran Doub, Asst. Atty. Gen., Donald B. MacGuineas, Atty., Dept. of Justice, Washington, D. C., Leon H. A. Pierson, U. S. Atty., and William J. Evans, Asst. U. S. Atty., Baltimore, Md., for Colonel Roy Muth.

THOMSEN, Chief Judge.

Plaintiffs are Negroes who attempted to purchase a home in Edgewood Meadows, a private real estate development near the Army Chemical Center at Edgewood, Harford County, Maryland. The developers refused to sell to plaintiffs solely because of their race. Plaintiffs thereupon brought this class action against (a) the developers, (b) the Harford County Metropolitan Commission, which supplies water and sewage disposal service in the Edgewood Sanitary District, and purchases water and sewage disposal service from the United States pursuant to 10 U.S.C.A. § 2481, (c) the County Commissioners of Harford County, and (d) Colonel Roy Muth, the Commanding Officer of the Army Chemical Center. Plaintiffs seek: (1) a declaratory judgment that the developers' refusal to sell them a house was a violation of their rights under the Fifth and Fourteenth Amendments, (2) an injunction restraining the developers from refusing to sell houses to Negroes, (3) an injunction restraining the Metropolitan Commission from furnishing water and sewage service to the developers as long as the developers refuse to sell to Negroes, and (4) an injunction restraining Colonel Muth, as Commanding Officer of the Army Chemical Center, from carrying out the contract under which the Government sells water and sewage disposal services to the Metropolitan Commission "as long as these benefits are used to discriminate against the plaintiffs".

Colonel Muth filed a motion to dismiss, but agreed that action on the motion be reserved until after a hearing on the merits. The case has been submitted on an "agreed statement of certain facts", numerous exhibits, and testimony offered by the several parties.

Facts.[1]

Plaintiff Brennie E. Hackley, Jr., a Ph.D. in Chemistry and a Captain in the Army Reserve, is employed as a civilian chemist at the Army Chemical Center at Edgewood. Until July 1959 his wife was also employed at the Center. Since 1952 plaintiffs have occupied an apartment in a Wherry housing project, located about a mile and a half from the entrance to the Center and three or four miles from the building where Hackley works. On 30 June 1959 a condemnation proceeding was instituted in this court by the United States to take over the

---

1. See the agreed statement and the exhibits for a fuller statement of some of the facts found.

Wherry housing. See 42 U.S.C.A. 1594a. Henceforth those apartments will be assigned to military personnel and civilian employees who are essential to the national defense. Hackley does not fall within either of these classes, so plaintiffs were notified on 1 July 1959 that they would have to move, but have received extensions from Colonel Muth because of the pendency of this suit. The decision to condemn the Wherry housing was made by officials of the United States without consulting any of the defendants. Plaintiffs' race had nothing to do with the decision requiring them to move; there has been no racial discrimination in assigning the apartments.

Defendant Harford County Metropolitan Commission is a public corporation, organized under Chapter 679 of the Laws of Maryland of 1953, as amended;[2] its Commissioners are appointed by the County Commissioners of Harford County. The Metropolitan Commission established the Edgewood Sanitary District on 2 July 1957, and has installed a system of pipes, mains and conduits for water distribution and sewage disposal within that district, an area of about four square miles. In June 1958 it issued bonds to finance the construction of the system. Principal and interest charges on the bonds, current operating expenses and maintenance costs are met by benefit assessments on property owners using the system, and by connection charges and service charges. If the monies so generated are not sufficient to pay the principal and interest on outstanding bonds, the County Commissioners shall levy and collect a tax under its general powers of property taxation sufficient to pay said bonds, with interest.

Defendant County Commissioners of Harford County, Maryland, is a municipal corporation.[3] It approved the bond issues of the Metropolitan Commission and the public works agreements, hereinafter referred to, but had nothing to do with the other events leading up to this case.

Since 1 October 1959 defendant Muth has been Commanding Officer of the Army Chemical Center at Edgewood, where the Government owns, maintains and operates a sewage disposal plant and a water supply plant of sufficient size and capacity to create a surplus of such services beyond the needs of the Government. The applicable statute, 10 U.S.C.A. § 2481, authorizes the Secretary of the Army or his designee to "sell or contract to sell to purchasers within or in the immediate vicinity of an activity of the Army * * * any of the following utilities and related services, if it is determined that they are not available from another * * * source and that the sale is in the interest of national defense or in the public interest: * * * (4) Water. (5) Sewage and garbage disposal." The proceeds of such sales "shall be credited to the appropriation currently available for the supply of that utility or service." Army regulations[4] designate the Chief of Engineers, Headquarters, Department of the Army, acting for the Secretary of the Army, as the Department of the Army Power Procurement Officer, prescribe the policy, responsibility, and procedure for the preparation and approval of contracts for the sale of utility services, and prescribe the form of such contracts.

Pursuant to the statute and regulations, the United States, acting through

2. The powers, duties and functions of the Harford County Metropolitan Commission are set out in the following Acts of the General Assembly of Maryland: Chapter 679 of the Acts of 1953, as amended by Chapter 187 of the Acts of 1955, Chapter 746 of the Acts of 1957, and Chapters 281 and 558 of the Acts of 1959.

3. The powers, duties and functions of the County Commissioners of Harford Coun-

ty are set out in the Constitution and Public General Laws of the State of Maryland and in the Code of Public Local Laws of Harford County, 1957 ed., as amended.

4. AR 420–41, 30 April 1958; SR 420–470–1, 15 June 1949, including C5, 1 September 1955 and C6, 26 October 1955; AR 420–62, 30 April 1958; and AR 420–62, 6 December 1954.

854

an authorized contracting officer, entered into a contract with the Harford County Metropolitan Commission, dated 14 March 1958, under which the Metropolitan Commission is permitted to procure from the Army Chemical Center water and sewage disposal facilities for most of the Edgewood Sanitary District. The Engineering Corps had charge of the negotiations with the Metropolitan Commission; the Commanding Officer of the Army Chemical Center had no power to fix or alter the terms of the contract, and Colonel Muth, who was appointed Commanding Officer on 1 October 1959, has no such power.

The contract between the United States and the Metropolitan Commission provides that the Government's water and sewage services are temporarily supplied as an accommodation to the Commission because such services are not otherwise readily obtainable by the Commission, that the furnishing of such services is deemed to be in the public interest, and that the Commission's use of such services is limited to such time as they can be supplied by the Government as surplus to its own needs and the Commission cannot readily obtain such services from another source. The Commission is required at its own expense to install meters and other facilities necessary for making connections with the Government's lines. Through its connecting lines, the Commission is to serve houses, public schools, a post office, the Pennsylvania Railroad, and business establishments in the designated area.[5] The designated area includes the 103 acres in Edgewood Meadows which are now being developed. The contract, as modified from time to time, fixes the rates per gallon which the Commission pays to the Government for water which it receives from and for sewage which it runs into the Government lines; the con-

tract provides that such charges "shall be the local prevailing rates, if any, for similar services, provided that the rates shall at all times produce a revenue which is not less than the cost to the Government of supplying the services, including losses, overhead and capital charges."

Some 165 connections were made by users to the system as originally constructed by the Metropolitan Commission. The present users include 180 private houses, some of which are occupied by Negroes and half of which are occupied by military personnel, a post office, a railroad station, a public school, a private white housing development and a private Negro housing development, both owned by the A & P Realty Co., and lying between the Wherry housing and the entrance to the Chemical Center.

The Metropolitan Commission does not discriminate in any way with respect to the service which it furnishes. It is required by law to furnish its services to all applicants, and no one in the district is now permitted to maintain private sewage disposal facilities.

Defendant Ward & Bosely, Inc., is a Maryland corporation engaged in buying, selling and developing real estate and acting as brokers and agents. Two of its directors own the 103 acres which are presently being developed as part of Edgewood Meadows. An affiliated corporation, defendant Art Builders, Inc., is engaged in the actual construction and development of Edgewood Meadows, and Ward & Bosely, Inc., has the exclusive authority to sell, lease, rent or otherwise dispose of the houses to be erected on the lots in the development. This opinion refers to the two corporations collectively as "the developers".

As now planned, the development will include a recreational area, a shopping center, a professional center and 700 medium-priced houses, 500 of which lie

5. No new Government-owned sewer or water lines were constructed, but the Metropolitan Commission assumed responsibility for maintaining, and replacing if necessary, certain Government-owned lines, as well as for constructing a sewer line approximately one and one-quarter miles in length on Government property. Part of the sewage which is discharged into this outfall sewer line originates in the Wherry housing, now owned by the Government.

within the boundaries of the Edgewood Sanitary District. Seven houses have been built; one has been sold; the others are being used as sample homes.

On 25 August 1959 Art Builders, Inc., the Metropolitan Commission and the County Commissioners entered into a preliminary public works agreement, of a type generally used in the counties of Maryland, in connection with the extension of the mains, pipes and conduits of the Metropolitan Commission into Edgewood Meadows. A final agreement, in a customary form, was signed on 6 October 1959. Under those agreements, Art Builders, Inc., undertook, inter alia, to provide water pipes, sanitary sewers, storm drains, streets, and other public facilities in accordance with prescribed standards, to construct a limited number of substantial, detached residential dwelling units on each lot serviced by the water and sewage facilities constructed under the agreement, and to pay for the necessary connections.

The Metropolitan Commission has executed a contract for the construction of necessary pipes, mains and conduits to extend the water and sewage services into Edgewood Meadows, and actual construction has been started by the contractor. The Metropolitan Commission offered $100,000 of its bonds for sale on 8 December 1959 to finance the construction of this extension, but the sale was cancelled when the complaint in this suit was filed.

No stockholder or director of the developers is a member, officer, or employee of either the County Commissioners of Harford County or the Metropolitan Commission.

During the negotiations between the Metropolitan Commission and the developers there was no discussion as to whether or not the developers would sell houses to Negroes. However, although public facilities in Harford County are desegregated and the schools are being desegregated according to a plan approved by this court and by the Fourth Circuit,[6] most Negroes live in long-established Negro areas, and private housing developments in the county are all-Negro or all-white.

There is considerable private reluctance to sell homes to Negroes in white areas, but a substantial number of such sales have been made in Aberdeen and Havre de Grace, some in Bel Air, and a few in scattered rural areas.

In August 1959 Hackley asked one of the County Commissioners privately to inquire whether plaintiffs would be able to buy a home in Edgewood Meadows, and was told that the developers almost certainly would not sell to Negroes. On 9 October 1959, after Hackley learned that the developers were accepting deposits through the mail from prospective buyers, he mailed a letter to Ward & Bosely, Inc., enclosing his check in the amount of $100 as a deposit on "one of the houses in the development known as Edgewood Meadows". The check was endorsed "for deposit only" by Ward & Bosely, Inc., but was not deposited for collection. Ten days later Hackley visited the corporation's office and inquired of R. Walter Ward whether the deposit would be accepted and plaintiffs would be able to purchase a home in Edgewood Meadows. Ward said that he did not think that houses in Edgewood Meadows would be sold to Negroes, but that he would have to consult with his board of directors before giving a final answer. On or about October 27 Ward & Bosely, Inc., returned the check, and one of its salesmen called Hackley on the telephone and told him that his deposit was being returned because Edgewood Meadows would be an "all-white" development.

After 27 October 1959 and prior to the filing of this suit, Ward & Bosely Co., Inc., through one of its salesmen offered plaintiffs a house in Bel Air, ten miles from Edgewood, but the offer was rejected.

6. Moore v. Board of Education of Harford County, D.C.D.Md., 152 F.Supp. 114, affirmed Slade v. Board of Education, 4 Cir., 252 F.2d 291, certiorari denied 357 U.S. 906, 78 S.Ct. 1151, 2 L.Ed.2d 1157.

Plaintiffs wish to live in the Edgewood area because of easier access to Hackley's place of work and to the facilities of the Army Chemical Center, such as the officers' club, kindergarten, and the like, and because they have lived in that area since 1950. The Negro housing within ten miles is of poor quality. On the other hand, vacant land in neighboring areas is available to them and plaintiffs are purchasing a piece of land about eight miles away. They have been unable to purchase or rent a satisfactory home in the Edgewood area; but I am not satisfied that they would be unable to purchase a satisfactory home within a reasonable distance of the Center. Colonel Muth considers it desirable that employees of the Center live within ten or twelve miles, but many live in Bel Air and other areas ten to fifty miles away.

In November, just before filing suit, Hackley discussed his housing problems with Colonel Muth, who was sympathetic and called in his legal adviser. If Hackley had wished to "process" a grievance, the contract would have been checked by appropriate authorities, but Hackley decided to take legal action instead.

## Discussion.

■ It is elementary that "the action inhibited by the first section of the Fourteenth Amendment is only such action as may fairly be said to be that of the States. That Amendment erects no shield against merely private conduct, however discriminatory or wrongful". Shelley v. Kraemer, 334 U.S. 1, 13, 68 S. Ct. 836, 842, 92 L.Ed. 1161; Williams v. Howard Johnson's Restaurant, 4 Cir., 268 F.2d 845. The developers of Edgewood Meadows are private corporations, engaged in the business of selling real estate to private individuals. As such, they are legally entitled to deal with whom they please.

The decision not to sell to Negroes was made by the officers of the two private corporations. The other defendants did not participate in the decision in any way. There is nothing in any state or local law, or in any of the contracts offered in evidence, which deals with the question. The public bodies involved in this case—the United States, the County Commissioners and the Metropolitan Commission—do not discriminate in any way in the services which they provide, and they did not authorize any discrimination.

It is true that "Housing is a necessary of life. All the elements of a public interest justifying some degree of public control are present". Block v. Hirsh, 256 U.S. 135, 156, 41 S.Ct. 458, 460, 65 L. Ed. 865, a wartime rent control case. State statutes regulating sanitary requirements have been held valid, but such statutes are designed to protect the health of the community and do not authorize state officials to control the management of private housing developments, apartment houses, and the like, nor to dictate what persons shall be served. Williams v. Howard Johnson's Restaurant, supra, 268 F.2d at page 848.

■ Plaintiffs contend that even if there is no control by any Federal or State agency in this case, there was such assistance to the housing development by the United States and by the Metropolitan Commission that the action of the developers must be characterized as governmental action. However, the Metropolitan Commission rendered no assistance to such developers beyond that generally rendered to developers in Maryland. The Edgewood Sanitary District was established for the benefit of every one in the district. The Public Works Agreement is an arm's length contract, calling for customary action and payments by the several parties. It did not make the developers agents of the Commission, as contended by plaintiffs. Most apartment house owners and owners of private houses throughout the State receive water and sewage disposal service from public corporations. This does not make such owners subject to the same rules as public corporations, or publicly controlled corporations. See Williams v. Howard Johnson's Restaurant, supra; Eaton v. Board of Managers of James Walker Memorial Hospi-

tal, 4 Cir., 261 F.2d 521; Dorsey v. Stuyvesant Town Corp., 299 N.Y. 512, 87 N.E.2d 541, 14 A.L.R.2d 133, certiorari denied 339 U.S. 981, 70 S.Ct. 1019, 94 L.Ed. 1385; Johnson v. Levitt & Sons, D.C.E.D.Pa., 131 F.Supp. 114.

In the Stuyvesant Town case there was considerable governmental aid to the private corporation, including tax exemption amounting to many millions of dollars, and aggregation of the land through use of the city's power of eminent domain and through exchange of bordering tracts for city streets which had been closed. Nevertheless, after a full discussion of Shelley v. Kraemer, supra, Marsh v. State of Alabama, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265, and other Supreme Court cases, the majority of the Court of Appeals held that the "aid which the State has afforded to respondents and the control to which they are subject are not sufficient to transmute their conduct into State action under the constitutional provisions here in question". 299 N.Y. at page 536, 87 N.E.2d at page 551, 14 A.L.R.2d at page 146. The facts relied on by the dissenting judges are not present in the instant case. In the Levittown case the development of the project had been aided by many FHA and VA guarantees of mortgages, and those agencies had imposed certain requirements with respect to architectural and development plans, the amount and terms of the mortgage loans and continuing obligations to comply with construction requirements in the future. Judge Kirkpatrick held that these requirements did not make Levitt a branch of the government nor make the government the developer of the Levittown project. He said: "Neither the F.H.A. nor the V.A. has been charged by Congress with the duty of preventing discrimination in the sales of housing project properties. What the plaintiffs are saying in effect is that these agencies ought to be charged with that duty. But that is something which can be done only by Congress and which cannot be forced upon the agencies in question by the courts through the medium of the injunctive process." 131 F.Supp. at page 116.

The contract between the United States and the Metropolitan Commission is not essentially different from the arrangement between Baltimore City and Baltimore County.[7] The fact that the Federal Government is involved and not another State agency is immaterial. Johnson v. Levitt & Sons, supra. The thrust of the Fifth Amendment is no stronger than the thrust of the Fourteenth, and is similarly limited to public action.

The only case to the contrary, Ming v. Hogan, Sup.Ct. Sacramento, Cal., 3 Race Rel.L.Rep. 693, is not legally persuasive. If the rule contended for by plaintiffs were adopted, where should the line be drawn? Every business, every property owner receives various services from the State and Federal Governments, many of them at less than cost.

Plaintiffs contend that the developers are lessees of the Metropolitan Commission and sub-lessees of the United States, and that this case is controlled by Department of Conservation and Development, Division of Parks, Com. of Va. v. Tate, 4 Cir., 231 F.2d 615. See also Derrington v. Plummer, 5 Cir., 240 F.2d 922, certiorari denied 353 U.S. 924, 77 S.Ct. 680, 1 L.Ed.2d 719. Those cases do not apply here. In the first place, the developers are not lessees of the Metropolitan Commission, and the contract between the Metropolitan Commission and the United States is not a lease. Even if it were, the essential facts which dictated the decisions in Tate and Derrington are not present here. Moreover, the services sold by the United States to the Metropolitan Commission were surplus services, above the needs of the Government. Cf. Derrington v. Plummer, supra, 240 F.2d at page 925. The other decisions cited by plaintiffs dealt with entirely different situations.

---

7. Authorized by Chapter 539, Laws of Maryland, 1924; Code of Public Local Laws of Baltimore County, 1955 ed., sec. 498 et seq.

858

Plaintiffs' final point is "that the custom, policy, practice and/or usage of the defendants in concert and by design in excluding the plaintiffs and other persons, similarly situated, who are members of the Reserve Armed Forces of the United States and who are employees of a priority National Defense installation of the United States situated and located in Harford County, Maryland, from housing zoned, regulated and controlled by a Governmental subdivision of the State of Maryland and to be serviced, exclusively, as to water and sewage, solely because of the plaintiffs' race and color, is unconstitutional and void in that said custom, policy, practice or usage constitutes an unreasonable interference with and burden upon the exercise by the Congress of the United States of its powers to raise and support armies, to promote and secure the National Defense of the United States and to promote and secure the welfare and morals (sic) of the members of the Armed forces of the United States and their dependents, as provided by Article 1, Section 8, Subsection (12) and (14) of the Constitution of the United States".

There was no concert or design between Colonel Muth, the United States, the County Commissioners or the Metropolitan Commission, and the developers. Hackley is an officer in the Army Reserve, but he is a civilian employee of the Army Chemical Center. If he were classed as military personnel or if he were essential to the national defense, he could remain in his present apartment.

The plight of the Hackleys has aroused more sympathy in the court than counsel for defendants feel is justified, but I cannot find, as urged by plaintiffs in their brief, that the refusal of the developers to sell them a home in Edgewood Meadows "while under a vacating order from the Army Chemical Center in effect will remove the plaintiff Brennie E. Hackley, Jr., from his employment and cause him to resign from the Army". Even if it would cause him to resign, that would not justify, under art. 1, sec. 8(12) and (14) of the Constitution, the proposed injunction against Colonel Muth, requiring him to interrupt the furnishing of water and sewage service to the Metropolitan Commission under the contract. Moreover, such an injunction would leave without any water or means of sewage disposal the families of military personnel and civilian employees of the Army Chemical Center, Negro as well as white, to say nothing of other innocent civilians.

Plaintiffs have proved no case entitling them to any of the relief prayed. This decision makes it unnecessary to determine whether, if plaintiffs had proved a case, the complaint should nevertheless be dismissed as against Colonel Muth as an unconsented suit against the United States. Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628.

Judgment will be entered in favor of defendants, with costs.