Sara **SLACK**

v.

**ATLANTIC WHITE TOWER SYSTEM, INC.**

**Civ. No. 11073.**

United States District Court
D. Maryland.

Feb. 16, 1960.

Joseph L. McLemore, Lawrence R. Bailey, Alexander A. Farrelly, Godfrey R. de Castro, New York City, and Charles P. Howard, Jr., Baltimore, Md., for plaintiff.

J. Cookman Boyd, Jr., and Walter S. Levin, Baltimore, Md., for defendant.

THOMSEN, Chief Judge.

Plaintiff brings this suit against Atlantic White Tower System, Inc., on her own behalf and on behalf of all others similarly situated, complaining that she was wrongfully refused service in its restaurant at Pulaski Highway (U.S. 40) and Highland Avenue, in Baltimore City, on June 8, 1957, because she is a Negro. She prays a declaratory judgment that the denial of such service violates her rights secured by the Constitution and laws of the United States, an injunction restraining such discrimination at any eating establishment under defendant's ownership, management or control, and other and further relief.

### Facts.

The parties filed the following agreed statement of facts:

"Plaintiff, a Negro, is a resident of New York City, New York.

"Defendant is a Delaware Corporation operating and maintaining restaurants in the City of Baltimore, Maryland, and in cities of the State of Pennsylvania and in the District of Columbia.

"Plaintiff is a newspaper reporter by occupation and is employed by a newspaper having national circulation.

"On June 8, 1957 Plaintiff was returning from Washington, D. C. to New York City by automobile after have (sic) completed a reporting assignment in Washington, D. C. At about 9:25 in the morning of said date, Plaintiff entered a public eating establishment owned and oper-

ated by Defendant located in the City of Baltimore, State of Maryland, on U.S. Highway 40, near Highland Avenue. The Defendant's premises * * * consist of a building, housing the eating establishment, and a parking area on which there was located a sign reading 'Parking—Only While Eating in White Tower—Trespassers will be Prosecuted.' * * *

"Plaintiff entered the White Tower and ordered two (2) large hamburgers to go. Then a few minutes later, Plaintiff ordered apple pie and coffee. The counter girl started to fix the pie to be taken out and Plaintiff told her that she wanted to eat it in the restaurant. Following the custom of the area the counter girl refused to serve the food to Plaintiff for consumption on the premises because Plaintiff was a member of the Negro race. At that time, there were vacant seats and accommodation for the use and service of patrons.

"Defendant has restaurants only in the State of Maryland and Pennsylvania and in the District of Columbia. It owns no commissary in any of these areas. Purchases or transportation or delivery across state lines, made by or to said Restaurants, if any, are not substantial."

■ The court will take judicial notice of the Annual Reports of the Commission on Interracial Problems and Relations [1] to the Governor and General Assembly of Maryland. Those reports show that in June 1957 it was not the uniform "custom of the area" to refuse to serve both Negroes and whites in the same restaurant, as indicated by the agreed statement of facts.

The Report dated January 1958 states that in 1957 Negroes were excluded or segregated in 75% of the restaurants in Baltimore, but accepted (unqualified) in 25%. The list of establishments accepting both races included the Howard Johnson's Restaurant on Route 40 in Baltimore City, a short distance from defendant's restaurant, hotel dining rooms, stores with counter service, and eating places of all types, in all sections of the city, many located on important through routes. A similar list was published for areas in Montgomery County, adjacent to the District of Columbia.

## Discussion.

Plaintiff seeks to avoid the authority of Williams v. Howard Johnson's Restaurant, 4 Cir., 268 F.2d 845, by raising a number of points not discussed therein, and by arguing that in Maryland segregation of the races in restaurants is required by the State's decisional law and policy, whereas, she argues, that was not true in Virginia, where the Williams case arose. She also contends that the Williams case was improperly decided and should not be followed by this court.

### The State's Policy and Decisions on Segregation.

As a basis for her contention that the alleged custom, practice and usage of segregating the races in restaurants in Maryland is in obedience to the decisional law of Maryland, she cites Williams

---

1. The Commission was created by ch. 548, Acts of 1951, set out in the January 1956 Annual Report, p. 9. That Report and those for subsequent years have been filed as exhibits in this case. They show that considerable progress has been made in reducing discrimination in various areas by means of education, negotiation and persuasion, without sacrificing good will between the races and without producing such violent incidents as have occurred in some large cities where the ratio of Negroes to whites is much lower than in Baltimore. In Baltimore during the past ten years voluntary action has produced the following changes, inter alia: opening of all first-run movie theatres to Negroes; adoption of nondiscriminatory food service and room policies in all major hotels, with one exception; end of white-only service in nearly all department store activities, at many downtown and drugstore lunch counters and at a slowly increasing number of restaurants.

v. Zimmerman, 1937, 172 Md. 563, 192 A. 353, 355, a school case, where the Court of Appeals said "Separation of the races is normal treatment in this state", and Durkee v. Murphy, 1942, 181 Md. 259, 29 A.2d 253, 256, a public park case. In the latter case the court said: "There can be no question that, unreasonable as such antipathies may be, they are prominent sources of conflict, and are always to be reckoned with. Many statutory provisions recognize this need, and the fact needs no illustration. 'Separation of the races is normal treatment in this state.' * * * No additional ordinance was required to authorize the Board to apply this normal treatment; the authority would be an implied incident of power expressly given." See also Boyer v. Garrett, D.C.D.Md. 1949, 88 F.Supp. 353, affirmed, 4 Cir., 183 F.2d 582.

Much water has gone under the bridge since those cases were decided. By ch. 22 of the Acts of 1951, Maryland repealed its Jim Crow laws, Ann.Code, 1939 ed., art. 27, secs. 510 to 526.[2] At the same session the Commission on Interracial Problems and Relations was created. A month after the first opinion in Brown v. Board of Education, 1954, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873, the Board of School Commissioners of Baltimore City abolished segregation in the Baltimore public schools. Shortly after the second Brown opinion, 1955, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083, the Attorney General of Maryland advised the State Superintendent of Schools that all constitutional and legislative acts of Maryland requiring segregation in Maryland public schools are unconstitutional and must be treated as nullities. The Attorney General referred to "the legal compulsion presently existing on the appropriate school authorities of the State of Maryland to make ' * * * a prompt and reasonable start' toward the ultimate elimination of racial discrimination in public education." Varying progress has been made in the several counties. See e. g. Moore v. Board of Education of Harford County, D.C.D. Md., 152 F.Supp. 114, affirmed Slade v. Board of Education of Harford County, 4 Cir., 252 F.2d 291, certiorari denied 357 U.S. 906, 78 S.Ct. 1151, 2 L.Ed.2d. 1157; Groves v. Board of Education of St. Mary's County, D.C.D.Md., 164 F.. Supp. 621, affirmed 4 Cir., 261 F.2d 527; Annual Reports of the Commission, January 1958, p. 21, January 1960, p. 20.

In Dawson v. Mayor and City Council of Baltimore, 4 Cir., 220 F.2d 386, affirmed 350 U.S. 877, 76 S.Ct. 133, 100 L.Ed. 774, segregation in public parks and bathing beaches was held unconstitutional. The City and the State promptly desegregated all park facilities which had not already been desegregated. So far as this court is aware, no State or City facilities of any kind are now segregated, except certain places of Reformation and Punishment, Ann.Code, 1957 ed., art. 27, secs. 646 to 726. And the January 1956 Annual Report of the Commission, p. 12, notes that fifteen colored girls had been transferred from Crownsville State Hospital to Rosewood Training School, theretofore an all white institution.

The Court of Appeals of Maryland has not specifically overruled Williams v. Zimmerman or Durkee v. Murphy, but they are not regarded as law by the Maryland courts or by anyone else in. the State. See Heintz v. Board of Education of Howard County, 1957, 213 Md.. 340, 131 A.2d 869; Burr v. Sondheim, 1954, Sup.Ct. of Baltimore City, Race Rel.L.Rep., Vol. 1, No. 2, p. 309.

█ Such segregation of the races as persists in restaurants in Baltimore is not required by any statute or decisional law of Maryland, nor by any general custom or practice of segregation in Baltimore City, but is the result of

---

2. The Virginia statutes requiring segregation of the races in facilities furnished by carriers and by persons engaged in the operation of places of public assemblage were still on the books when Williams v. Howard Johnson's Restaurant arose. See 268 F.2d at page 847, note 2.

the business choice of the individual proprietors, catering to the desires or prejudices of their customers.

## Common Law and Statutory Duties of a Restaurant Owner in Maryland.

Plaintiff's next argument is that defendant, as a licensee of the State of Maryland operating a public restaurant or eating facility, had no right to exclude plaintiff from its services on a racial basis. She rests her argument on the common law, and on the Maryland license laws.

In the absence of statute, the rule is well established that an operator of a restaurant has the right to select the clientele he will serve, and to make such selection based on color, if he so desires. He is not an innkeeper charged with a duty to serve everyone who applies. Williams v. Howard Johnson's Restaurant, 268 F.2d at page 847; Alpaugh v. Wolverton, 184 Va. 943, 36 S.E.2d 906; State v. Clyburn, 247 N.C. 455, 101 S.E.2d 295; and authorities cited in those cases. There is no restaurant case in Maryland, but the rule is supported by statements of the Court of Appeals of Maryland in Greenfeld v. Maryland Jockey Club, 190 Md. 96, 102, 57 A.2d 335, and in Good Citizens Community Protective Ass'n v. Board of Liquor License Commissioners, 217 Md. 129, 131, 141 A.2d 744.[3]

Art. 56, secs. 151 et seq., of the Ann. Code of Md., 1939 ed. (163 et seq. of the 1957 ed.), deals with licenses required of persons engaging in all sorts of businesses. Sec. 166 (now 178) provides: "Each person, firm or corporation, resident or nonresident, operating or conducting a restaurant or eating place, shall, before doing so, take out a license therefor, and pay an annual license fee of ten dollars ($10.00) for each place of business so operated except that in incorporated towns and cities of 8,000 inhabitants or over, the fee for each place of business so operated shall be twenty-five dollars ($25.00)." The Attorney General of Maryland has said that "A restaurant is generally understood to be a place where food is served at a fixed price to all comers, usually at all times." This statement was made in an opinion distinguishing a restaurant from a boarding house for licensing purposes. 5 Op.Atty.Gen. 303. It was not intended to express an opinion contrary to the common law right of a restaurant owner to choose his customers. The Maryland Legislature and the Baltimore City Council have repeatedly refused to adopt bills requiring restaurant owners and others to serve all comers regardless of race; several such bills are now pending. See Annual Report of Commission, January 1960, p. 29.

## Interstate Commerce.

Plaintiff contends that defendant is engaged in interstate commerce, that its restaurant is an instrumentality or facility of interstate commerce and thus subject to the constitutional limitations imposed by the Commerce Clause (Const. art. 1, sec. 8); and that defendant's refusal to serve plaintiff, a

---

3. In DeAngelis v. Board of Liquor License Commissioners for Baltimore City, in the Baltimore City Court, reported in the Daily Record of July 26, 1955, a rule of the City Liquor Board which required a licensee to apply to the Board for permission to change over from white to colored trade, and vice-versa, was held to be unconstitutional, as applied to a license holder. Judge Manley said: " * * the effect of the decision is that the petitioner has the right to determine for himself whether he desires to sell exclusively to colored patrons, exclusively to white patrons, or to a mixed patronage of white and colored.

"The decision should not be construed as conferring any right on white persons to be served in taverns where the licensee limits *his* customers to colored trade. Nor does it confer any right on colored people to be served in taverns where the licensee limits his customers to white trade. * * * *"

This language was quoted by the Maryland Court of Appeals in Good Citizens Community Protective Ass'n v. Board of Liquor License Commissioners, 217 Md. 129, 131, 141 A.2d 744.

traveler in interstate commerce, consti-- tuted an undue burden on that commerce.

A similar contention was rejected in Williams v. Howard Johnson's Restaurant, 268 F.2d at page 848. It would be presumptuous for me to enlarge on Judge Soper's opinion on this point.

### State Action.

"The action inhibited by the first section of the Fourteenth Amendment is only such action as may fairly be said to be that of the States. That Amendment erects no shield against merely private conduct, however discriminatory or wrongful." Shelley v. Kraemer, 334 U.S. 1, 13, 68 S.Ct. 836, 842, 92 L.Ed.2d 1161. Plaintiff seeks to avoid this limitation by arguing that the admission by the state of a foreign corporation and the issuance to it of a license to operate a restaurant "invests the corporation with a public interest" sufficient to make its action in excluding patrons on a racial basis the equivalent of state action.

The fact that defendant is a Delaware corporation is immaterial. Once admitted to do business in the State of Maryland, it has the same rights and duties as domestic corporations engaged in the same business. This factor does not distinguish the case from Williams v. Howard Johnson's Restaurant, 268 F.2d at page 847, where the state action question was discussed.

The license laws of the State of Maryland applicable to restaurants are not regulatory. See Maryland Theatrical Corp. v. Brennan, 180 Md. 377, 381, 382, 24 A.2d 911. The City ordinance, No. 1145, November 27, 1957, adding sec. 60½ to art. 12 of the Baltimore City Code, 1950 ed., which was not offered in evidence or relied on by plaintiff, is obviously designed to protect the health of the community. Neither the statute nor the ordinance authorizes State or City officials to control the management of the business of a restaurant or to dictate what persons shall be served.

Even in the case of licensees, such as race tracks and taverns, where the business is regulated by the state, the licensee does not become a state agency, subject to the provisions of the Fourteenth Amendment. Madden v. Queen's County Jockey Club, 296 N.Y. 249, 72 N.E.2d 697, 1 A.L.R.2d 1160, certiorari denied 332 U.S. 761, 68 S.Ct. 63, 92 L.Ed. 346, cited with approval in Greenfeld v. Maryland Jockey Club, 190 Md. at page 102, 57 A.2d at page 337; Good Citizens Community Protective Ass'n v. Board of Liquor License Commissioners, 217 Md. 129, 141 A.2d 744. No doubt defendant might have had plaintiff arrested if she had made a disturbance or remained at a table too long after she had been told that she would only be sold food to carry out to her car. But that implied threat is present whenever the proprietor of a business refuses to deal with a customer for any reason, racial or other, and does not make his action state action or make his business a state agency. Plaintiff cites Valle v. Stengel, 3 Cir., 176 F.2d 697. In that case a sheriff's eviction of a Negro from a private amusement park was a denial of equal protection of the laws because under the New Jersey anti-discrimination law the Negro had a legal right to use the park facilities.

Plaintiff cites such cases as Nixon v. Condon, 286 U.S. 73, 52 S.Ct. 484, 76 L.Ed. 984, and Smith v. Allwright, 321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987, for the proposition that when individuals or groups "move beyond matters of merely private concern" and "act in matters of high public interest" they become "representatives of the State" subject to the restraints of the Fourteenth Amendment. The distinction between holding a primary election and operating a restaurant is obvious, and has always been recognized by the courts. Defendant has not exercised powers similar to those of a state or city.

In Kerr v. Enoch Pratt Free Library of Baltimore City, 4 Cir., 149 F.2d 212, also relied on by plaintiff, "the Library was completely owned and largely supported * * * by the City; * * * in practical effect its operations were subject to the City's control", as the

Fourth Circuit pointed out in distinguishing the Library case from Eaton v. Board of Managers of the James Walker Memorial Hospital, 4 Cir., 261 F.2d 521, 527.

The argument that state inaction in the face of uniform discriminatory customs and practices in operating restaurants amounts to state action was rejected in Williams v. Howard Johnson's Restaurant, 4 Cir., 268 F.2d 845. Moreover, as we have seen, the factual premise for the argument is not sound in the instant case.

The clerk will enter judgment in favor of the defendant, dismissing the complaint.