DAVIDSON v. CHINESE REPUBLIC RESTAURANT CO.

1. PRINCIPAL AND AGENT—MASTER AND SERVANT—TORTS OF SERVANT—SCOPE OF AUTHORITY.

   It is the general rule that an employer is not liable for wanton, wilful, and malicious acts of an employee not authorized or ratified.

2. MASTER AND SERVANT—ASSAULT BY SERVANT—DIRECTED VERDICT.

   In an action by a patron of a restaurant against the proprietor for personal injuries received by plaintiff, where the case made by plaintiff's testimony was that the head waiter, as plaintiff was about to leave defendant's restaurant, made an unexpected, unprovoked, and wholly indefensible assault upon him, so sudden that there was no opportunity for any one else to interfere, the court below should have directed a verdict for defendant.[1]

3. SAME—TRIAL—INSTRUCTIONS—EVIDENCE.

   In view of the facts as testified to by plaintiff, an instruction by the court that defendant was bound to see that no assault was committed on plaintiff by an employee of the restaurant, was erroneous.

4. PRINCIPAL AND AGENT—MASTER AND SERVANT—TORTS OF AGENT—SCOPE OF AUTHORITY.

   If a patron of a restaurant without provocation strikes a waiter and receives in return a harder blow than a jury may think it was necessary to deliver, the consequences are not for the proprietor and employer to settle, he neither aiding, abetting, nor counseling the action of the waiter.

5. MASTER AND SERVANT—ARGUMENT OF COUNSEL—TRIAL—CURING ERROR.

   Where plaintiff's counsel, in his opening statement, referred to the head waiter as a "professional bouncer, as the evidence will show," and the evidence was limited to two occasions within the past two years, the remark, while prejudicial, in view of the peculiar nature of the case and the fact that a question similar in its character was asked one of plaintiff's witnesses, will not be considered reversible error, the court having properly cautioned the jury upon the subject.

[1]See notes in 69 L. R. A. 642; 12 L. R. A. (N. S.) 1155.

Error to Wayne; Mandell, J.   Submitted January 23, 1918.   (Docket No. 151.)   Decided June 3, 1918.

Case by Peter Davidson against the Chinese Republic Restaurant Company for an assault and battery. Judgment for plaintiff.  Defendant brings error.  Reversed.

*Millis, Griffin, Seely & Streeter,* for appellant.

*Wilkinson, Routier & Hinkley,* for appellee.

OSTRANDER, C. J.   If the testimony of the plaintiff is believed, he was wantonly and brutally assaulted and beaten by the head waiter of the defendant with an instrument suspected to have been a "billy," rather than described and known to have been one, while leaving the restaurant where, with his wife and some friends, he had been served with refreshment.  The bill had been paid, not by plaintiff, but by a companion, and nothing remained to be done but to leave, and plaintiff and his party were leaving.  No one else connected with the restaurant, apparently, advised, instigated or approved of the conduct of the head waiter, whose action was unexpected, unprovoked and wholly indefensible, and so sudden that there was no opportunity for any one else to interfere.  A peremptory instruction was asked for by defendant when plaintiff rested his case, and was refused.

If defendant's testimony is believed, plaintiff misbehaved himself in a room in which were patrons of the restaurant, ladies among them, talked boisterously, used profane language, and, being requested to leave the place, was taking his leave accompanied to the door—a very short distance—by the head waiter, whom, without provocation, he struck in the face, who retaliated by striking him with a piece of wood used to fasten back the entrance door.

The declaration, which contains a single count, presents no tender of an issue upon the theory that defendant employed improper or vicious servants, and does not·suggest that too much force was used in ejecting plaintiff from the restaurant.   The testimony presents no issue upon either subject.   Although the notice given with the plea sets out as a possible defense that plaintiff misbehaved, requiring his removal, no one claims that he was being forcibly ejected when the alleged assault occurred.

The jury assessed plaintiff's damages at $930, and judgment was entered on the verdict.   A new trial and a judgment *non obstante* were refused.

In 42 assignments of error, 15 of which are based·upon the refusal of the court to charge the jury as requested, the defendant complains of the action and rulings of the trial court, the most important question being whether the court rightly advised the jury how to determine whether the proprietor of the restaurant was responsible for the consequences of the act of the waiter.   Errors are assigned, also, upon rulings admitting and rejecting testimony, and upon alleged prejudicial remarks of counsel in the presence of the jury.

Defendant says the plaintiff, when he rested, had made a case on all fours with the case of plaintiff in *Ducre* v. *Lumber Co.*, 168 Mich. 49, and that, conforming to the rule of that case, the court should have directed a verdict for defendant.   Plaintiff insists that the plaintiff in that case was not upon the defendant's premises by invitation, a fact mentioned in the opinion, which fact distinguishes the cases, and that, in any event, the relation of a restaurant keeper to his patrons is similar to that of an innkeeper to guests and of a common carrier to passengers—a relation which imposes a duty to protect patrons as well as the duty not to injure them—out of which relation may arise

liability for the acts of a servant who wilfully or otherwise injures guests. Upon this subject the jury was advised by the court in different portions of the charge as follows:

"There is another matter that the defendant urges. The defendant says that if this assault was committed in the manner complained of by the plaintiff nevertheless no recovery could be had against the defendant because the defendant could not be liable under a principle of law that exists that one would be responsible only under a principle known as *respondeat superior.* If Miller was acting on his own account, by reason of any malice or hatred or anything of that kind and without justification made an assault upon the plaintiff then the defendant would not be responsible because that would be something outside of the scope of Miller's employment. Therefore, gentlemen of the jury, one is responsible only for the conduct of one who he retains or hires as long as that conduct is in and about the employment for which the person was engaged.   *   *   *

"I charge you, gentlemen of the jury, that one conducting a restaurant as defendant in this case, in which he depended upon public patronage thereby invites persons into its place of business to patronize it and it is the duty of a restaurant keeper and his servants to treat those who patronize his place of business with civility and protect them from unwarranted assault by the employees of such place. And in this connection if you find while plaintiff was lawfully in the restaurant of the defendant and leaving there and before he could get out of the door the head waiter assaulted plaintiff without legal justification therefor and the manager and the cashier of the defendant as the evidence shows was present and used no effort to prevent the assault—the rest I will leave out.

"I charge you that while one such as the plaintiff in this case enters a restaurant open for the entertainment of the public the defendant is bound to see that he is properly protected both in entering and leaving the said public place of entertainment and the proprietor is bound to see that he is properly protected and that no assault is committed on his person by

any of its employees. I charge you that the defendant in this case being the operator of a restaurant, the plaintiff was in the defendant's restaurant by virtue of the general invitation which—I think I have said enough on that.   *   *   *

"I charge you that it is the law of this State that an employer is not liable for wanton, wilful and intentional assault committed by his servants in wanton violation of the law even though the said agent may at the time be in the employ of the master and about his premises, and to render the master responsible the injury must arise in the course of the execution of some service lawful in itself but negligently or unskilfully performed. For a wanton violation of law by a servant, although occupied about the business of an employer such a servant is alone answerable. The general proposition that a person shall be answerable for any injuries which arise in carrying into execution that which he has employed another to do seems to be too large. His liability depends upon the nature of the employment, the occupation of a person employed and the control or authority of the employer over the person employed, as well as over the manner of the execution of the employment and also upon the occasion and nature of the injury.

"I charge you that there are many cases of wilful misconduct for which an employer will not be liable because in such cases the wrongdoer may be regarded as having renounced his service to that extent. I further charge you that if the servant steps aside from his master's business for however short a time, to do an act not connected with such business, the relation of master and servant for the time being is suspended. If you find in this case that Miller wantonly, wilfully and intentionally struck Davidson upon the head as described by said Davidson he would not be acting within the scope of his master's authority and the Chinese Republic Restaurant Company would not be liable."

Counsel for appellee say they have—

"cited to the court certain cases which are on all fours with the case at bar and others involving assaults where the facts are perhaps not the same, but the rule

of law therein announced is no different than that for which we contend."

The cases cited have been examined. In citing them, but one, namely, *Goodwin* v. *Greenwood*, 16 Okla. 489, is said to be on all fours with the case at bar. The opinion in that case lays down no new doctrine, but applies the principles stated by this court in *Ducre* v. *Lumber Co.*, and in other cases. Among other things, it is said:

"The instructions as a whole proceed upon the theory that to fix a liability upon a restaurant keeper because of an assault upon a patron by an employee, the employee must be acting within the scope of his employment and the assault must be found to be unjustifiable. We are not able to distinguish the liability of a restaurant keeper from that of any other master for liability for the tortious acts of his servants committed within the real or apparent scope of the duties entrusted to him, and to the extent that *Rahmel* v. *Lehndorff*, 142 Cal. 681 (76 Pac. 659), is at variance with this proposition we do not agree with that case. The facts in that case, however, are not shown to be analogous to the facts in the case at bar. In that case it appeared from the only statement of facts made that 'the plaintiff was a guest in the defendant's hotel and while seated at the dinner table was assaulted and beaten by a dining room waiter.' There is nothing in that record to show how the difficulty arose or what the provocation for the assault was, or who provoked it, and the court in that case states the general law of master and servant to be that the master is not liable for the malicious torts of the servant committed outside the scope of his employment."

Appellee cites, also, *Clancy* v. *Barker*, 71 Neb. 83, 91, a case in which it was held that the tortious act of a servant of a hotel keeper injuring a guest constitutes a breach of the implied contract between the guest and the proprietor of the hotel for the entertainment of the guest, citing some cases in which, it is said, the duties of a hotel keeper to his guests are regarded as

similar to the common law obligation of a common carrier to his passengers. One of the cases cited in the opinion is *Rommel* v. *Schambacher*, 120 Pa. St. 579, a case in which it appeared that plaintiff entered defendant's saloon, became intoxicated, and while in that condition, and in full view of defendant, an intoxicated companion attached a piece of burning paper to the plaintiff's clothing, resulting in severe injury to plaintiff. In *Clancy* v. *Barker*, 131 Fed. 161 (66 C. C. A. 469), in which the same facts were considered as were before the court in the Nebraska case, an opposed conclusion is reached, in an application of the general rule of the master's liability for torts of his servants. In *Chase* v. *Knabel*, 46 Wash. 484 (90 Pac. 642, 12 L. R. A. [N. S.] 1155), it was held that the proprietor of a restaurant is liable for unnecessary violence used by his servants in ejecting a patron, if they were acting within the scope of their duty, but not if they were actuated by personal ill will, jealousy, hatred, or other ill feelings.

It is unnecessary to state here the relation of the proprietor of an inn to his guests, because a restaurant is not an inn. One eats, perhaps drinks, in a restaurant, pays for what is served, and goes away. The business resembles more nearly that of the storekeeper who sells wares to the public, which is invited to come and inspect and buy or decline to buy what is offered for sale. The common carrier of passengers undertakes to transport the person of the passenger to an agreed upon destination, using the highest degree of care. Interference with the person of the passenger may amount to a tort. It is also a breach of the contract of carriage. In *Johnson* v. *Railway*, 130 Mich. 453, this court said:

"The principal contention of the defendant is that the company is not liable for this act of the conductor, because not within the scope of his authority. We

think the rule relieving the master from liability for a malicious injury inflicted by his servant when not acting within the scope of his employment does not apply between a common carrier of passengers and a passenger, and that it is the duty of the carrier to protect its passengers against injury from the wilful misconduct of its servants while performing the contract to carry."

In the opinion in *Ducre* v. *Lumber Co.*, a number of the decisions of this court are cited, and some of them reviewed and applied. In that case, liability of the master for wanton and unprovoked assault made by its salesman clerk upon plaintiff was denied, under an application of the general rule that an employer is not liable for wanton, wilful and malicious acts of an employee not authorized or ratified. Upon this record, and the case made by plaintiff's testimony, it is the applicable rule, and, applying it, the court should have directed a verdict for defendant, when plaintiff rested his case. Perhaps it is the rule which the trial court proposed to lay down in the charge, which of course must be read as a whole and with reference to the testimony adduced; but when the portions of the charge above set out are considered and read with the remainder of the charge, the charge as a whole appears to be inconsistent, and this is so whether the theory of the plaintiff or that of the defendant is regarded. The rule stated in the paragraph of the charge last above quoted, applied to the plaintiff's case when he rested, required a directed verdict for defendant. There was an assault—the plaintiff was struck—by the waiter, an employee of defendant. The instruction complained of, the third paragraph above quoted, broadly advises the jury that the defendant was bound to see that no assault was committed on plaintiff by an employee of the restaurant. The jury may have accepted the facts as testified to by plaintiff, and, if they applied this instruction to their find-

ing, it would seem that a verdict for plaintiff was inevitable.

The cause must go down for a new trial, in view of which a portion of the charge, addressed to defendant's theory, and complained about, is noticed. The jury was instructed as follows:

"I charge you, gentlemen of the jury, that should you find from the evidence that the plaintiff struck or made a pass to strike Leo Miller, the defendant's servant, and he did actually strike the said Leo Miller, the defendant's servant would be entitled to retaliate with a blow, using no more force in such blow than was necessary to repel any further attack being made by plaintiff on the said defendant's servant, and should you find from the evidence that plaintiff did strike the defendant's servant and that the defendant's servant used more force than was necessary, under all the circumstances, then your vedict will be for the plaintiff. In addition to that, you will have to find that in what was done the defendant's servant acted in the scope of his employment, or for and on behalf of his employer, or in his interest."

If a patron of a restaurant without provocation strikes a waiter, and receives in return a harder blow than a jury may think it was necessary to deliver, the consequences are not for the proprietor and employer to settle, he neither aiding, abetting, nor counseling the action of the waiter. Applying the particular instruction to the testimony, it referred to a blow claimed by defendant to have been struck by plaintiff at the entrance of the restaurant when he was leaving it. Plaintiff denies having struck or offered to strike the waiter. If he struck him, then in any view of the testimony, whether for plaintiff or for defendant, it was an unprovoked assault, the consequences of resenting which, by the waiter, using such force as reasonably seemed to him to be necessary, cannot be charged to the employer, whether the waiter in accompanying plaintiff to the entrance was or was not

acting within the scope of his employment. There is no testimony tending to prove that the plaintiff proposed to remain in the restaurant, whether he was or was not asked to leave it, nor to prove that the waiter was using force to remove him. There is testimony, for defendant, that the waiter asked him to leave and that he accompanied plaintiff to the entrance, having his hand upon plaintiff's arm. Upon the testimony submitted to the jury, either the defendant's waiter, at the entrance door, pushed and struck the plaintiff, without provocation, or the blow he struck was in retaliation for an unprovoked blow given the waiter by the plaintiff. And although there is testimony, disputed by plaintiff, tending to prove that what the waiter said in asking plaintiff to leave and what he did in accompanying him to the entrance were advised or assented to by the manager, there is none tending to prove that the blow delivered by the waiter was advised or assented to or was apprehended by the manager.

Before plaintiff had rested, he called a witness by whom he sought to prove that upon previous occasions assaults had been threatened or made by employees of the restaurant upon patrons. Upon objection, the testimony was excluded. Its purpose was announced by counsel for plaintiff, who said to the court:

"There may be a motion for the direction of a verdict on the ground that there is no showing of any assault with connivance, and it is competent to show that this is not a single occurrence but a common occurrence."

Later on, the jury having withdrawn, the witness was again introduced and plaintiff offered to prove that other people had been assaulted in practically the same way that plaintiff claimed to have been assaulted, and that "billies" had been seen in the hands of different waiters at that restaurant for "a period

of the last two years; that they were unprovoked assaults." Something of the sort was indicated in the opening statement of counsel for plaintiff who, in describing what it was intended to prove, spoke of the particular waiter, Miller, as a professional bouncer "as the evidence will show." The offer to prove was confined to two occasions "within the past two years." On one occasion the witness and another had ordered refreshment at about 1:30 a. m., and, the delay in serving it being considerable, started to go out before being served. The man at the desk inquired of them whether they intended to wait and eat the chop suey they had ordered and was answered "no," whether they intended to pay for it and was answered "no." That thereupon one Chinaman engaged the witness in conversation and another took from the cigar case a "billy" and from behind attempted to strike the witness upon the head, the blow falling on his shoulder. Upon the other occasion, at a later time, the same witness was in the restaurant and some boys who were at another table were served with refreshments. A dispute arose between them and the Chinaman, and the boys refused to pay the check. Three Chinamen, with their "billies," were demanding payment when the witness interfered. The offer to prove contained, also, the following:

"We offer testimony at this time to show that the manager of this restaurant repeatedly permitted and allowed their employees up there to carry billies and knew that they had them."

The offer was excluded. Appellant complains about the opening statement which I have referred to. It is said in appellee's brief:

"We were of the opinion that the commission of assaults upon other patrons of the restaurant, with the same sort of instrument, in the presence of the operators of this restaurant and officers of the corporation,

was clearly competent as the establishment of the aiding and abetting of such unlawful acts."

It may be doubted if the offered testimony tended in any way to prove that the waiter Miller was a "professional bouncer." The remark was prejudicial, especially in view of the peculiar nature of the case and the fact that a question similar in its character was asked one of plaintiff's witnesses. But the court properly cautioned the jury upon the subject and, assuming the good faith of counsel, this alleged error, alone, will not be considered reversible error.

Other matters discussed by appellant are not likely to arise upon a new trial, and therefore will not be considered.

The judgment is reversed, with costs to appellant, and a new trial is granted.

Bird, Moore, Steere, Brooke, Fellows, and Stone, JJ., concurred. Kuhn, J., did not sit.