## NANCE v. MAYFLOWER TAVERN, Inc.

No. 6704. Decided July 25, 1944. (150 P. 2d 773.)

See 43 C. J. Municipal Corporations, Sec. 173. Restaurant as an inn, note, 53 A. L. R. 988. See, also, 28 Am. Jur. 546.

D. H. OLIVER, of Salt Lake City, for appellant.

HURD & HURD, of Salt Lake City, for respondent.

WOLFE, Chief Justice.

The plaintiff brought this action to recover damages from the defendant for the latter's refusal to serve food to the plaintiff when the plaintiff presented himself at the defendant's restaurant for service. To the plaintiff's complaint the defendant interposed a general demurrer. The demurrer was sustained, the plaintiff failing to plead over, the action was dismissed. From the judgment of dismissal, the plaintiff prosecutes this appeal.

The complaint alleges that on February 20, 1943, the defendant Mayflower Tavern, was a corporation engaged in the operation of a restaurant and cafe business in Salt Lake City, Utah. That on that date the plaintiff presented himself at the defendant's restaurant for service of food, but that the defendant refused to serve him. The refusal was alleged to have been without cause and in "insulting and humiliating language, and in an offensive manner." This is alleged to have caused the plaintiff great humiliation and embrassament which injured his "pride, reputation, ambition and aspirations."

The plaintiff also alleged that at the time of the defendant's refusal to serve the plaintiff there was in full force and effect in Salt Lake City, an Ordinance (Sec. 674, para-

graph 4, Revised Ordinances of Salt Lake City, Utah) which provided:

"The door or doors of every restaurant shall be and remain unlocked and unfastened during all the time any person or persons, including the keeper, or any employee is therein, and during such time no orderly person shall be refused admission thereto."

The only question presented for our determination is: Does the complaint state facts sufficient to constitute a cause of action? In support of his contention that it does, the plaintiff asserts that the defendant was required by the quoted ordinance to serve food to every person who in an orderly manner presented himself to the defendant's restaurant for service. That the refusal of the defendant to serve the plaintiff was a violation of this ordinance and gave rise to a cause of action for ensuing damages. The defendant contends that the ordinance cannot be so construed. We do not deem it necessary to resolve this conflict. If the ordinance were designed as a "civil rights" measure to compel all operators of restaurants to serve all orderly people, it would be void as being beyond the legislative power which has been delegated to the city which enacted it.

As stated by Dillon, "Municipal Corporations," ██ ██ 5th Ed., Sec. 237:

"It is a general and undisputed proposition of law that a *municipal corporation possesses and can exercise the following powers and no others*: First, those granted in *express words*; second, those *necessarily* or *fairly implied* in or *incident* to the powers expressly granted; third, those essential to the accomplishment, of the declared objects and purposes of the corporation,—not simply convenient, but indispensable. Any fair, reasonable, substantial doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied."

This language has been quoted with approval in at least three prior cases in this jurisdicition. See *Salt Lake City* v. *Sutter,* 61 Utah 533, 216 P. 234; *Logan City* v. *Buck,* 3 Utah 301, 2 P. 706; *Salt Lake City* v. *Revene,* 101 Utah, 504, 124 Pac. 2d 537. From these authorities it appears

clear that cities have no inherent or original legislative power. To determine whether or not a city has the power to enact any particular ordinance the court must look to the legislative grant of power and to the Constitution of the State of Utah. If there is a reasonable doubt concerning the existence of a particular power, that doubt should be resolved against the city, and the power should be denied.

The legislative grant of power upon which the plaintiff relies to support his contention that this ordinance as he construes it would be within the delegated power of the city is Section 15-8-39, U. C. A. 1943. This section grants to cities the power to "license, tax and regulate * * * restaurants, eating houses, lodging houses, * * *." The Constitution, Article XI, Sec. 5, grants to cities forming charters pursuant to the procedure outlined in Section 5 of Article XI the power to exercise "all powers relating to municipal affairs, and to adopt and enforce within its limits, local police, sanitary and similar regulations not in conflict with the general law * * *."

Neither the statute nor the Constitution authorized municipalities to legislate in regard to civil rights. If the statute which authorizes cities to tax, license and regulate restaurants were to be construed as empowering the city to pass a civil rights bill regarding restaurants, the ■ section would also have to be construed so as to permit civil rights legislation by cities in regard to all businesses and occupations enumerated in the same section. It is clear that the legislature never contemplated that cities should have such powers. Even the most liberal civil rights statutes do not purport to embrace many of the types of businesses enumerated in this section. For example, the section covers hawking and peddling, pawn brokers and loan agencies, employment agencies, auctioneers, ticket scalpers, distilleries and breweries, brokers, smelters, crushers, sampling works and mills, boarding houses, laundries, barber shops and beauty shops, *drivers* of stages, busses, sight-seeing and touring cars, porters, expressmen and draymen, second-hand and junk stores, storage houses, photographers, assayers,

billboards, billposting and the distribution or display of advertising matter. The inclusion of these various businesses and occupations quite clearly shows that the legislature did not intend by the enactment of this section to delegate the power to cities to pass civil rights measures regarding each of the businesses and occupations enumerated. The power to enact civil rights legislation is not granted in express words either by constitution or by statute, nor is it necessarily or fairly implied in or incident to the powers expressly granted. Likewise it cannot be held to be essential to the accomplishment of the declared objects and purposes of the corporation, or as Dillon states, "indispensable" to the accomplishment of the declared objects. We therefore hold that cities have no power to enact such civil rights legislation. If the ordinance upon which the plaintiff relies was designed as a civil rights measure to compel restaurants to serve all orderly persons, it is invalid as being beyond the delgated power of the city enacting it.

Nor is there any statute which would require the defendant to keep its restaurant open to all orderly people. We pointed out in *De La Ysla* v. *Publix Theatres Corporation*, 82 Utah 598, 26 P. 2d 818, that many states have civil rights statutes, but that we have none.

Reference is made by counsel to Section 103-29-2, U. C. A. 1943 which provides that: "Every person * * * carrying on business as an innkeeper who refuses, without just cause or excuse, to receive and entertain any guest is guilty of a misdemeanor." However, this statute has no application here, for a "restaurant" is not an "inn" and the defendant, in operating a restaurant is not an "innkeeper." See *Sheffer* v. *Willoughby*, 61 Ill. App. 263; *Ford* v. *Waldorf System*, 57 R. I. 131, 188 A. 633, 635; *State* v. *Brown*, 112 Kan. 814, 212 P. 663; 28 Am. Jur. 645; Williston On Contracts, Sec. 1066, Rev. Ed. 1936.

The duties and liabilities placed upon inns and innkeepers at the common law was not applied to restaurants. As noted in *Davidson* v. *Chinese Republic Restaurant Co.*, 201 Mich. 389, 167 N. W. 967, 969, L. R. A. 1918 E, 704, a restau-

rant more nearly resembles a storekeeper who sells his wares to the general public. The court said:

"It is unnecessary to state here the relation of the proprietor of an inn to his guests, because a restaurant is not an inn. One eats, perhaps drinks, in a restaurant, pays for what is served, and goes away. The business resembles more nearly that of the storekeeper who sells wares to the public, which is invited to come and inspect and buy or decline to buy what is offered for sale."

In Beale, "The Law of Innkeepers and Hotels," pp. 1-9, there is a resume of the historical development of the inn and the reasons for the common law liabilities placed on the innkeeper. This development shows quite clearly why the duties and liabilities of an innkeeper differed materially from those of other storekeepers selling wares to the public. Beale notes that the inn developed to serve the needs of the traveler in medieval England. Roads were poor and persons traveling of necessity traveled light. They needed food for themselves and their horses and a place to rest for the night. Inns were located so that travelers could travel from one inn to a neighboring inn during the daylight hours. The intervening country was more often than not infested with robbers and thieves who made night-time travel dangerous.

"Thus," Beale states, "out of the needs of the wayfarer and as an incident of travel from place to place grew the English inn. It was established to supply the needs of the traveller along his journey, to wit, to furnish food and drink for man and beast and rest and safety for the night."

In noting the distinction between the inn and the tavern or alehouse Beale states:

"The one was instituted for the weary traveller, the other for the native; the one furnished food that the traveller might continue his journey, the other furnished drink for the mere pleasure of neighbors; the one was open to the traveller for protection at night, the other turned its guest out at the very moment when he most needed protection, and left him to find it, if his remaining senses permitted him to do so, in his own home. It is unnecessary, therefore, to point out

the fact that a tavern is not an inn, and the innkeeper's duties do not extend to the tavernkeeper."

Many states have by statute imposed upon restaurants and many other businesses the duty of serving all orderly persons who present themselves for service. But as noted by the annotator in 9 Am. & Eng. Ann. Cases, p. 70, "except as to carriers and innkeepers, these civil rights statutes create a liability which did not exist at the common law * * *." See also *Grace* v. *Moseley,* 112 Ill. App. 100.

It thus appears that there was no common law duty on the part of the defendant to serve the plaintiff when the latter presented himself at the defendant's restaurant for service.

It follows that the defendant has breached no duty toward the plaintiff under either the common law or by statute or valid city ordinance. The complaint does not state a cause of action. The judgment of the trial court is affirmed. Costs to respondent.

LARSON, McDONOUGH, WADE, and TURNER, JJ., concur.