22656.   WALKER v. THE STATE.

416

ARGUED SEPTEMBER 16, 1964—DECIDED NOVEMBER 5, 1964—
REHEARING DENIED NOVEMBER 19, 1964.

*Howard Moore, Jr., Donald Hollowell,* for plaintiff in error.

*William T. Boyd, Solicitor General, J. Walter LeCraw, Wm. E. Spence,* contra.

MOBLEY, Justice. ■ The demurrer attacks the statute upon the ground that it denies equal protection and due process guaranteed by the 14th Amendment of the United States Constitution (*Code* § 1-815) and due process guaranteed by the Georgia Constitution (*Code Ann.* § 2-103). This court has settled these questions adversely to her contentions in *Clark v. State,* 219 Ga. 680 (135 SE2d 270), and in those cases at pages 829 and 830 of the same volume. The court properly overruled the general

demurrer. This court considers these cases sound and correct, and, accordingly, denies request of counsel that they be overruled.

■ Defendant in her plea in abatement contends that the trespass Act is being applied by public authorities representing the State itself in such manner as to amount to a denial by the State of equal protection and due process of law as guaranteed to her by the Federal Constitution and due process guaranteed by the Constitution of Georgia.

She alleges specifically that the Act is being applied in her case so as to perpetuate, encourage, aid and abet, and to officially encourage and foster a scheme of racial discrimination in places of public accommodation in Atlanta, Fulton County, Georgia; that the Police Department of Atlanta, acting through its officers as agents of the State, arrested defendant and others for refusing to leave the Krystal Co., a place of public accommodation licensed by the City of Atlanta, after having been requested to leave the place solely because the Krystal serves Negroes on a discriminatory basis, that is, only upon a take out, stand up basis, and members of the white race are not served when accompanied by Negroes; that State action was involved because a warrant was improperly and illegally issued by a Judge of the Civil-Criminal Court of Fulton County without proper application therefor, and police officers of the city advised and instructed agents of Krystal as to the manner in which defendant's arrest could be procured; that other State action results from failure of the police department to enforce *Code* §§ 52-103 and 52-105, which require every eating place to accommodate and receive all guests, and that this is a part of the scheme to permit continued racial segregation; that only Negroes and Caucasians accompanied by Negroes have been arrested in the City of Atlanta for violation of the trespass Act, and that at the time defendant was arrested she was exercising rights protected by Art. I, Sec. I, Par. III of the Constitution of Georgia and the 1st Amendment of the United States Constitution, as made applicable to the States by Sec. I of the 14th Amendment, in that they sat peacefully at the counter of the Krystal as an act, protest, and expression of condemnation, and

■

as a way of publicly and directly criticizing racial discrimination practiced by the Krystal.

The trial court after hearing evidence, found against the contentions of the defendant and denied the plea in abatement.

(a) The trial court recognized, and properly so, "that a law, even though fair and constitutional on its face, may not legally be applied to achieve an unconstitutional result or be legally applied so as to deprive any person of rights, privileges, and immunities under the Constitution of Georgia and of the United States of America," citing Herndon v. Lowry, 301 U.S. 242 (57 SC 732, 81 LE 1066), and that "if it is applied and administered by public authority with an evil eye and an unequal hand so as practically to make unjust and illegal discriminations between persons in similar circumstances material to their rights, the denial of equal justice is still within the prohibition of the Constitution," citing Yick Wo v. Hopkins, 118 U.S. 356, 373 (6 SC 1064, 30 LE 220).

The vital and controlling issue made by the plea in abatement is whether State action was involved in the alleged denial of equal protection of the law as guaranteed by the 14th Amendment and due process under the Federal and State Constitutions. It is undisputed that under decisions of the United States Supreme Court, State action must be involved. See Peterson v. City of Greenville, 373 U.S. 244, 247 (83 SC 1119, 10 LE2d 323), where that court stated, "private conduct abridging individual rights does no violence to the Equal Protection Clause unless to some significant extent the State in any of its manifestations has been found to have become involved in it." The court held in that case that there was State action because a city ordinance required separation of the races in restaurants.

Neither the State of Georgia has a statute nor the City of Atlanta an ordinance requiring segregation of races in restaurants. Thus, that case is clearly distinguishable from this one.

In Lombard v. Louisiana, 373 U.S. 267 (83 SC 1122, 10 LE2d 338), neither Louisiana nor New Orleans had a statute or ordinance requiring segregation, but the court held that there was State action because the mayor and superintendent had announced that such "sit-in demonstrations" would not be per-

mitted. The court found from the evidence here that just the opposite was the policy in Atlanta, for the Board of Aldermen had adopted a resolution approved by the mayor urging all private businesses and others to give consideration to removal of all barriers as they relate to jobs and public accommodations and that place restrictions on account of race, creed, color or national origin. And found further that the police had refused to make arrests where the statute under consideration had been violated in their presence and had permitted demonstrators to take charge of Leb's Restaurant by entering and remaining many hours and blocking all entrances to the restaurant. This case is clearly distinguishable from Lombard.

In discussing the cases of Peterson, Lombard, Gober, Avent, and Shuttlesworth, Justice Harlan in Peterson v. Greenville, 373 U.S. 244, 249, stated: "In deciding these cases the Court does not question the long-established rule that the Fourteenth Amendment reaches only state action. Civil Rights Cases, 109 U.S. 3. And it does not suggest that such action, denying equal protection, may be found in the mere enforcement of trespass laws in relation to private business establishments from which the management, of its own free will, has chosen to exclude persons of the Negro race. Judicial enforcement is of course state action, but this is not the end of the inquiry. The ultimate substantive question is whether there has been 'State action of a particular character' (Civil Rights Cases, supra, at 11)— whether the character of the State's involvement in an arbitrary discrimination is such that it should be held *responsible* for the discrimination."

The thrust of defendant's argument is that "the issuance of an oral telephonic warrant (by Judge Wofford) is 'misuse of power' possessed by virtue of State law and made possible only because the judge was clothed with the authority of law in aid and support of an admitted practice of racial discrimination for which the State is accountable," citing United States v. Classic, 313 U.S. 299 (1941) (65 SC 1031, 85 LE 1368), and Justice Harlan's dissent in Peterson v. City of Greenville, 373 U.S. 244, 249 (1963).

In the first place there is no such thing as a "telephonic war-

rant," or an oral warrant. Our law makes no provision for such. See *Code* §§ 27-102—27-105, as to authority for issuance of warrants in criminal cases.

In the second place, the evidence shows without dispute that the alleged offense was committed in the presence of the arresting officer. Thus, he did not need a warrant. *Code* § 27-207. He testified that he called Judge Wofford over the telephone, that Judge Wofford told him that "warrants are issued for the subjects there that refused to leave." He also testified, "I consider myself arresting for a violation of the law, whether it be on the warrant, or whether it be in my presence, frankly, I don't know" and in reply to the question, "You didn't apply for the warrant, did you?" he stated, "No, I didn't need one." There was testimony from another officer that Judge Wofford told him he would issue warrants for them. Later in the afternoon he issued warrants, after getting the required affidavits from the manager of the Krystal. The judge was fully authorized to find that there had been no misuse of power by Judge Wofford.

As pointed out by Justice Harlan, supra, the Supreme Court of the United States does not hold that State action denying equal protection may be found in the mere enforcement of trespass laws in relation to private business establishments from which the management, of its own free will, has chosen to exclude persons of the Negro race. The evidence in this record clearly shows that the management of the Krystal in the exercise of its own free will and its right to do so excluded Negroes from service in its restaurant, and that the police only responded to a call from the manager of the Krystal, made the arrest only after the defendant refused to leave the premises after being requested to do so by the manager in the presence of the police and after she refused to leave.

(b) The contention that State action resulted from failure of the police to enforce *Code* §§ 52-103 and 52-105 is without merit. *Code* § 52-103 relates solely to the duty of an innkeeper to receive guests and § 52-105 to liens to which they are entitled.

(c) The evidence fully supported the finding of the trial judge that the contention that "only Negroes and Caucasians

accompanied by Negroes have been arrested in the City of Atlanta for violation of the anti-trespass Act" was not proved, for the evidence showed that others have been arrested in Atlanta for violation of the Act.

(d) The defendant's contention that she and her companions were exercising their rights of protest and expression of condemnation of the practice of racial discrimination, and that they were denied their right of freedom of speech as guaranteed by the Federal and State Constitutions, is without merit.

It is clear that the statute is not directed at what they said, but what they did—remaining on the premises of the Krystal Co. after being requested to leave said premises by the agent and employee of the owner. As pointed out by Justice Black in his dissenting opinion in Bell v. Maryland, 378 U.S. 226, 325 (12 LE2d 822), "None of our prior cases has held that a person's right to freedom of expression carries with it a right to force a private property owner to furnish his property as a platform to criticize the property owner's use of that property. Cf. Giboney v. Empire Storage & Ice Co., 336 U.S. 490 (1949)." Nor has any decision of this court so held.

■ The motion in arrest of judgment, which was based on the same grounds as the general demurrer, was not filed during the term of the court at which such judgment was obtained; thus, it was filed too late, and raises no question for this court. See *Code* § 110-703; *McEwen v. State*, 108 Ga. App. 352 (133 SE2d 38); *Regopoulas v. State*, 116 Ga. 596 (42 SE 1028).

■ Special ground 1 of the motion for new trial complains on two grounds of the charge of the court "that the private proprietor of a restaurant is free to serve whom he pleases and may exclude on purely personal grounds. He is under no duty to serve everyone who applies to him. He may accept some customers and reject others on purely personal grounds. This law applies to a short-order restaurant operated by a private company and managed by its agents and employees."

The charge is a correct statement of the law of this State. At common law the proprietor of a private business such as this restaurant was free to serve only whom he pleased and could exclude others with or without reason, according to his own

personal wishes. See Alpaugh v. Wolverton, (Va.), 36 SE2d 906, 908, which states: "The proprietor of a restaurant is not subject to the same duties and responsibilities as those of an innkeeper, nor is he entitled to the privileges of the latter. 28 Am. Jur., Innkeepers, § 120, p. 623; 43 CJS, Innkeepers, § 20, subsec. b, p. 1169. His rights and responsibilities are more like those of a shopkeeper. Davidson v. Chinese Republic Restaurant Co., 201 Mich. 389, 167 NW 967, 969, LRA 1918E, 704. He is under no common-law duty to serve everyone who applies to him. In the absence of statute, he may accept some customers and reject others on purely personal grounds. Nance v. Mayflower Tavern, Inc., 106 Utah 517, 150 P2d 773, 776; Noble v. Higgins, 95 Misc. 328, 158 NYS 867, 868." Georgia adopted the common law of England and has never adopted legislation providing otherwise.

The first complaint that the evidence did not authorize the charge because there was no evidence that the Board of Directors of the Krystal Co. had ever authorized or directed its manager, Mr. Drury, to refuse service to the defendant, a white person, on a sit down basis because of the race of the people accompanying her, and that he was without authority to do so is without merit. The evidence was ample to show that Mr. Drury was the authorized agent of the Company and in charge of the business, that the established policy of the Company was to sell to white or Caucasian people on a seated basis and to others on a take out basis, and the manager had authority to carry out the policy of the Company as to whom they would serve and in what manner. There was no evidence that he did not have such authority.

The second complaint is that the charge is incomplete as an abstract statement of law in that restaurants which are situated in hotels, taverns, and inns are obligated to accommodate all guests under Code § 52-103. This complaint is without merit because this restaurant was not situated in a hotel, tavern, or inn.

■ Special ground 2 complains that the court after charging that "The indictment alleges as follows: said business not being an instrumentality of the State, or of any other government body. This is an essential and material allegation which must

be established in order to convict . . ." erroneously charged that "if the State of Georgia should show that the business alleged was a short order restaurant owned and operated by The Krystal Company, a privately owned company, and operated by its agents and employees, such would constitute proof of this allegation."

The contention was that this charge amounted to the court's interpreting and expressing an opinion that the State had sustained its burden of proof as to the allegation. The ground is without merit. This was not an expression of opinion by the judge, but a correct statement of the law. If the business was shown to be a short order restaurant owned and operated by The Krystal Co., a privately owned company, it would establish that the Krystal was not an instrumentality of the State of Georgia, or any other governmental body in the absence of any evidence that it was an instrumentality of the State or other governmental body, as here. The evidence amply authorized the charge.

■ Special ground 3 assigns error upon the admission of the original business license issued by the City of Atlanta to the Krystal Co. upon the ground that it was not certified and that no showing was made that it was issued by proper authority or that it was kept in regular course of business. The evidence showed that the document was the original license issued by the City of Atlanta to the Krystal Co.; thus, proof of certification is not required. There is no merit in the complaint that no showing was made that it was issued by proper authority or kept in regular course of the business. It hung on the wall of the restaurant, carried the signature of the Municipal Revenue Collector of the City of Atlanta, acknowledged receipt of $162.00 for the licensing of Krystal Restaurant, 70 Peachtree Street, Atlanta, from January 1, 1964, to December 31, 1964, and the evidence was that it was the license issued by the city to Krystal for receipt of the fee or tax imposed by the city. If error to admit the license, it would have been harmless.

■ Special ground 4 complains of the admission of photographs of other persons arrested at the Krystal at the same time as the defendant, the ground of objection being that the

photos were not properly authenticated, in that there was no evidence that the machine, the camera which took the pictures, was working, or who was taking the pictures. The arresting officer testified that they were pictures of those arrested along with defendant. The ground obviously has no merit.

■ The question presented by special grounds 5, 6, and 7 is whether evidence of William Kontoes as to the participation by the defendant in the sit-in and demonstrations against Leb's Restaurant, which occurred twelve days after the happening of the acts for which she is on trial, was admissible on the trial of this defendant. This court in *Green v. State,* 172 Ga. 635 (158 SE 285), after stating the general rule that generally in a criminal case, evidence as to commission of other crimes of a similar nature than that charged in the indictment by the accused is inadmissible, pointed out that there is an exception to this rule, and that such evidence is admissible and competent proof of motive, scheme, design and intent of the defendant, and held that evidence of the commission of offenses of a similar nature subsequent to the commission of the deed for which he was indicted was admissible. See also *Phillips v. State,* 206 Ga. 418, 421 (4d) (57 SE2d 555). As to admission of evidence of similar crimes to show bent of mind, see *Suber v. State,* 176 Ga. 525 (1) (168 SE 585); general plan, scheme or motive see *Tucker v. State,* 180 Ga. 87 (1) (178 SE 152) and *Sisk v. State,* 182 Ga. 448 (1) (185 SE 777).

The defendant in her statement to the jury stated that she and her friends from Spelman College were downtown and wanted to get something to eat, and that they went to the Krystal for that purpose; that "I went there to get something to eat—we were just students who wanted something to eat"; that she did not want to get arrested and that she was not asked to leave the restaurant. The testimony of Kontoes, who was manager of Leb's, a privately owned and operated restaurant in Atlanta in the vicinity of the Krystal, was offered by the State in rebuttal of the defendant's statement. His evidence in brief was that the defendant had participated in a large demonstration of some forty people inside the restaurant and about two hundred on the outside who forced the closing of Leb's for some

eight hours on January 25, 1964. Defendant was on the outside, and she would read notes placed on the windows by those on the inside, and then pass the information to the leader of the demonstrators, and relay his messages back to those inside. The evidence indicated that she was one of the active leaders and participants in that demonstration and the forced closing of Leb's Restaurant for business on that occasion.

When this testimony was admitted, the court called the jury's attention "particularly to the fact that the defendant is on trial only for the offense charged in the bill of indictment, and this evidence objected to is admitted solely for the purpose of illustrating, if it does, the defendant's guilt or innocence of the transaction charged in the indictment and for the purpose of rebutting, if it does, some statement made by her in her unsworn statement before you." See *Suber v. State*, 176 Ga. 525 (1), supra.

This testimony was admissible to rebut defendant's contention that she and her companions innocently went to the Krystal to get something to eat and that she was not asked by the manager of the Krystal, Mr. Drury, to leave and that she did not want to be arrested. It was a circumstance which the jury could consider in deciding whether her evidence was true, or whether she knowingly went to the restaurant to demonstrate against Krystal's policy not to serve Negroes, or whites accompanied by Negroes, and that she was asked to leave by the police and refused to do, and that she wanted to be arrested.

We agree with the following statement by the trial judge in his judgment ruling on this ground: "The real question is whether subsequent transactions at Leb's either tended to rebut some statement made by the defendant in her unsworn statement before the jury, or tended to illustrate the truth or falsity of some allegation in the bill of indictment. In the opinion of the court this evidence did both."

■ The defendant in her brief argues that the general grounds of her motion for new trial should be sustained because of the passage of the Civil Rights Act of 1964, which abates her conviction and prospective punishment because section 203 (c) thereof provides that "no person shall punish or attempt to punish any person exercising or attempting to exercise any right or

privilege secured by section 201 and 202." Section 201 is the public accommodations section of the Act, which provides that "all persons shall be entitled to the full and equal enjoyment of goods, services . . . of any place of public accommodation as defined in this section, without discrimination or segregation on the ground of race, color. . ."

This ground raises no question for consideration of this court, as under the Constitution of 1945 (*Code Ann.* § 2-3704) this court has no original jurisdiction but is a court alone for the trial and correction of errors of law from the superior courts and certain other enumerated courts, and this court is limited in its consideration of the case to the rulings actually made by the trial court to which there is exception. *MacNeill v. Fulton County,* 210 Ga. 119 (1), 123 (78 SE2d 40). See also *Johnson v. Lancaster,* 5 Ga. 39 (4); *Vanderford v. Brand,* 126 Ga. 67 (54 SE 822, 9 AC 617). No ruling on this question was invoked by counsel or made by the trial court.

To demonstrate the fallacy of defendant's argument that this court should grant the motion for new trial on account of the passage of the Civil Rights Act, whether this particular restaurant comes within the provisions of the Civil Rights Act depends upon whether it is a place of public accommodation within the meaning of the Act. The Act, section 201, provides that a restaurant is a place within the meaning of the Act "if its operations affect commerce, or if discrimination or segregation by it is supported by State action." It is readily apparent that the determination of that question is one of fact, which can only be made in the trial court.

The general grounds of the motion for new trial are without merit.

*Judgment affirmed. All the Justices concur.*