Andra * DREW, Appellant,

v.

UNITED STATES, Appellee.

No. 5899.

District of Columbia Court of Appeals.

Argued Dec. 21, 1971.

Decided June 30, 1972.

Rehearing Denied En Banc July 27, 1972.

---

* Appellant's correct name is Andre Drew.

---

Thomas Fortune Fay, Olney, Md., appointed by this court, for appellant.

Charles E. Brookhart, Asst. U.S. Atty., with whom Thomas A. Flannery, U.S. Atty., at the time the brief was filed, and John A. Terry, Asst. U.S. Atty., were on the brief, for appellee.

Before KELLY, FICKLING and GALLAGHER, Associate Judges.

KELLY, Associate Judge:

This appeal from a conviction of unlawful entry[1] questions whether, absent some justifiable reason, a request to leave a restaurant by one lawfully in charge thereof can convert a lawful presence on the premises into a criminal trespass.

The evidence was that on the night of April 12, 1971, appellant and two compan-

ions entered and were seated in a local restaurant. Although he was conducting himself in a proper manner, appellant was informed by the night manager that his name was on a list of undesirables furnished by the owner of the restaurant and for that reason was asked to leave. When appellant failed to respond the police were called and appellant was arrested after again refusing to leave.

Appellant testified that he did not leave the restaurant because he was waiting for his friends to finish eating and because he felt he had a right to be there since it was a public place. The only response he made to the manager's requests was to ask why he had to leave.

The owner of the restaurant was not present at trial, but appellant's counsel elicited testimony from the night manager that appellant formerly worked in the restaurant; that the owner had told appellant not to come into the restaurant, and that he believed there was some question about the company appellant kept.

▇▇▇ It is claimed that appellant's presence in the restaurant was in the exercise of his "First Amendment right of assembly with his friends in a public place." However, it has long been recognized that constitutional safeguards "[add] nothing to the rights of one citizen as against another", but serve instead as "an additional guaranty against any encroachment by the States upon the fundamental rights which belong to every citizen as a member of society."[2] And it has been made clear that judicial enforcement of arbitrary discrimination by owners of private property through criminal trespass laws is not suffi-

---

1. D.C.Code 1967, § 22–3102 provides in part:

    Any person who, without lawful authority, shall enter, or attempt to enter, any public or private dwelling, building or other property, or part of such dwelling, building or other property, against the will of the lawful occupant or of the person lawfully in charge thereof, *or being therein or*

    *thereon, without lawful authority to remain therein or thereon shall refuse to quit the same on the demand of the lawful occupant, or of the person lawfully in charge thereof, shall be deemed guilty of a misdemeanor* . . . . [Emphasis supplied.]

2. United States v. Cruikshank, 92 U.S. 542, 554, 23 L.Ed. 588 (1876).

cient state (government) involvement in that discrimination to invoke a constitutional question.[3] Indeed, in the area of racial discrimination, it was this dilemma which necessitated the passage of the Civil Rights Act of 1964.[4]

Inroads against the doctrine that constitutional proscriptions apply only to governmental action have been made to the extent that where a private owner performs what is otherwise generally a governmental function he is held to constitutional standards.[5] This line of reasoning has no application here, however, and appellant's reliance thereon is misplaced.

Since there is no constitutional infirmity in appellant's conviction, his alleged right to remain on the premises must have a basis in statute, for at common law a restaurant owner had the right to arbitrarily refuse service to any guest.[6] The owner was not charged with the duty to serve everyone who applied; consequently it was generally held that "[i]n the absence of statute, he may accept some customers and reject others on purely personal grounds. . . ."[7] Appellant has shown no such statutory right to remain on the premises. Accordingly, his conviction must be

Affirmed.

3.  Peterson v. City of Greenville, 373 U.S. 244, 83 S.Ct. 1119, 10 L.Ed.2d 223 (1963) ; Turner v. City of Memphis, 369 U.S. 350, 82 S.Ct. 805, 7 L.Ed.2d 762 (1962) ; Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961).

4.  42 U.S.C. § 2000a et seq.

5.  Amalgamated Food Employees Union Local 590 v. Logan Valley Plaza, Inc., 391 U.S. 308, 88 S.Ct. 1601, 20 L.Ed.2d 603 (1968) (picketing on public walkways and parking areas of shopping centers is protected by the First Amendment, despite the fact that these areas are privately owned, because of their resemblance to the public areas of a municipality) ; Marsh v. Alabama, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946) (state cannot, consistently with the First and Four-

teenth Amendments, impose criminal punishment on a person who undertakes to distribute religious literature on the premises of a company-owned town contrary to the wishes of the town's management). See also People v. Rewald, 65 Misc.2d 453, 318 N.Y.S.2d 40 (1971) ; Diamond v. Bland, 3 Cal.3d 653, 91 Cal.Rptr. 501, 477 P.2d 733 (1970), cert. denied sub nom. Homart Development Co. v. Diamond, 402 U.S. 988, 91 S.Ct. 1661, 29 L.Ed.2d 153 (1971).

6.  Williams v. Howard Johnson's Restaurant, 268 F.2d 845 (4th Cir. 1959) ; Nance v. Mayflower Tavern, 106 Utah 517, 150 P.2d 773 (1944) ; Noble v. Higgins, 95 Misc. 328, 158 N.Y.S. 867 (1916).

7.  Alpaugh v. Wolverton, 184 Va. 943, 36 S.E.2d 906, 908 (1946).