**Sarah M. FELDT, Appellant,**

v.

**MARRIOTT CORPORATION, Appellee.**

**No. 7145.**

District of Columbia Court of Appeals.

Argued Dec. 11, 1973.

Decided July 24, 1974.

---

3.  Williams v. United States, 117 U.S.App.D.C. 206, 328 F.2d 178 (1963).

David Carey Woll, Rockville, Md., for appellant.

Robert S. Bennett, Washington, D.C., for appellee.

Before REILLY, Chief Judge, YEAGLEY, Associate Judge, and HOOD, Chief Judge, Retired.

HOOD, Chief Judge, Retired:

This appeal is from a directed verdict against appellant at the close of her evidence in an action for false arrest.[1]

Appellant's evidence showed the following facts without material contradiction. She, a young woman about 26 years of age, and her male escort had attended a dance at a fraternity house, and after leaving the dance went to a Junior Hot Shoppe, owned and operated by appellee. They went through a cafeteria line, selected and paid for some food, and then sat at a table and began to eat. The manager of the shop approached the table and told appellant she would have to leave because she was not wearing shoes.[2] No sign to

---

1. Appellant originally sued in the United States District Court for malicious prosecution and false arrest. The District Court granted summary judgment against appellant on her malicious prosecution claim, and certified the false arrest claim to the Superior Court for trial.

2. Appellant had worn her sister's shoes at the dance but found they were too small and removed them. When she entered the Hot Shoppe she left her shoes in her escort's automobile parked near the entrance. Her escort described her attire as "a very attractive pants suit . . . floor length." In her testimony she referred to her "long dress."

that effect was posted, but the manager said it was the company's policy to serve no one who was not wearing shoes. She replied she would leave as soon as she finished eating. The manager did not offer to refund her money and she asked for no refund.[3] He continued to insist that she leave and she continued to insist she would leave only when she had finished eating. The argument continued and she finally said to the manager: "Will you, please, go to hell." He walked outside and returned with a police officer. The manager again asked her to leave and the officer told her she would be violating the unlawful entry statute if she refused to leave after the manager had asked her to leave. She replied she would leave when she had finished eating. The officer took her arm and said unless she left he would arrest her. She arose and walked to the door and then observing the officer behind her began struggling with him and hit him.[4]

Appellant was then placed in a patrol wagon, taken to a precinct station, and later taken to the Women's Detention Center where she was fingerprinted, photographed and placed in a lineup. Hours later she was released on her personal recognizance and told to appear in court the next day. When she appeared in court she was told the charge against her would be dropped and she was free to leave.

■ It is clear that appellant entered the premises lawfully, but it is also clear that under our unlawful entry statute (D. C.Code 1973, § 22–3102) one who lawfully enters may be guilty of a misdemeanor by refusing to leave after being ordered to do so by the person lawfully in charge of the premises. Our question is whether the police officer was justified in arresting appellant when she, in his presence, refused to leave after being ordered to do so by the manager.

■ At common law a restaurant owner had the right to arbitrarily refuse service to any guest.[5] Absent constitutional or statutory rights, the common law still controls in this jurisdiction. This is not a case of racial discrimination or violation of civil rights.[6] We do have a statute making it unlawful for a restaurant to refuse service to "any quiet and orderly person" or to exclude any one on account of race or color;[7] but, as we have said, there was no racial discrimination here and we do not think the requirement to serve any quiet or orderly person prevents a restaurant from having reasonable requirements as to the dress of its customers, such as a requirement that all male customers wear coats and ties or, as here, that all customers wear shoes. Had the restaurant manager observed that appellant was not wearing shoes when she first entered the restaurant, he could have properly and lawfully refused to serve her and requested her to leave. Our question narrows down to whether the fact that the restaurant had served appellant food and received payment for it, prevented the restaurant from ordering appellant to leave when her shoeless condition was observed.[8]

---

3. There was testimony that the manager offered to get a bag so she could take the food (a hamburger and french fries) with her.

4. Appellant apparently did not think she was under arrest as she walked to the door, but the officer considered her arrested at the table when he placed his hand on her arm.

5. Drew v. United States, D.C.App., 292 A.2d 164, cert. denied, 409 U.S. 1062, 93 S.Ct. 569, 34 L.Ed.2d 514 (1972).

6. See Peterson v. City of Greenville, 373 U.S. 244, 83 S.Ct. 1119, 10 L.Ed.2d 323 (1963);

Lombard v. Louisiana, 373 U.S. 267, 83 S.Ct. 1122, 10 L.Ed.2d 338 (1963).

7. D.C.Code 1973, § 47–2902. See also District of Columbia v. John R. Thompson Co., 346 U.S. 100, 73 S.Ct. 1007, 97 L.Ed. 1480 (1953).

8. There is no indication in the record that the manager or any employee of the restaurant observed appellant's lack of shoes until after she was served and was seated. Perhaps her "floor length" clothing made her lack of shoes not readily observable.

■ The status of a customer in a restaurant, as far as we can ascertain, has never been precisely declared. It is not the same as a guest at an inn.[9] It resembles but is not the same as a patron in a retail store.[10] With respect to the duty of care owed by the restaurant, the customer is a business invitee. The once debated question of whether there is a sale, in the technical sense, of food to the customer,[11] has been settled, in respect to implied warranty, by the Uniform Commercial Code which declares that the serving for value of food to be consumed on the premises is a sale.[12]

However, we are not here concerned with a question of negligence or wholesomeness of food; but instead with the right of a customer, having been served with food, to remain on the premises after being ordered by the management to leave.

The nearest analogy we have found in the reported cases to the one here is that of a patron of a theater, racetrack or other place of public entertainment, who, after having purchased a ticket, is ordered to leave. It has been generally held that such patron has only a personal license which may be revoked at any time, leaving him only with a breach of contract claim. *See* Garifine v. Monmouth Park Jockey Club, 29 N.J. 47, 148 A.2d 1 (1959), and cases there cited.[13]

■ We think that is the applicable rule here. When appellant was ordered to leave, her license to be on the premises was revoked, whether legally or illegally, and she had no right to remain. Her remedy, if any, was a civil action for breach of contract. That the purchase of food for consumption on the premises established a type of contract between the restaurant and appellant did not give appellant a right in the premises superior to that of the restaurant. As observed by Justice Holmes in Marrone v. Washington Jockey Club, 227 U.S. 633, 33 S.Ct. 401, 57 L.Ed. 679 (1913), a contract such as this binds the maker but creates no interest in the property, and appellant had no right to enforce specific performance by self-help.

■ Our conclusion is that when appellant, in the presence of the police officer, refused to leave on the demand of the restaurant manager, the officer was justified in arresting her for violation of the unlawful entry statute.

Affirmed.

9. "Restaurateurs and owners of other places of amusement and resort have never been subjected to the same duties as innkeepers and common carriers. . . ." Douglas, J., concurring in Lombard v. Louisiana, *supra*, 373 U.S. at 279, 83 S.Ct. at 1128. (Footnote omitted.)

10. "The business [of a restaurant] resembles more nearly that of the storekeeper who sells wares to the public, which is invited to come and inspect and buy or decline to buy what is offered for sale." Davidson v. Chinese Republic Restaurant Co., 201 Mich. 389, 167 N.W. 967, 969 (1918).

11. *See* Cushing v. Rodman, 65 App.D.C. 258, 82 F.2d 864 (1936).

12. D.C.Code 1973, § 28:2–314(1).

13. *See also* Burrillville Racing Ass'n v. Garabedian, R.I., 318 A.2d 469 (1974); Griffin v. Southland Racing Corp., 236 Ark. 872, 370 S.W.2d 429 (1963); Tamelleo v. New Hampshire Jockey Club, 102 N.H. 547, 163 A.2d 10 (1960).