Dr. Bertrand O. TYSON, Plaintiff,

v.

Lt. Clarence J. CAZES, Officer Lionel Stein, Officer Lester Haydel, Jr., Officer Samuel Savage, Chief of Police Dennis Songy, Mr. Offie Stewart, Mrs. Lydia Stewart, Defendants.

Civ. A. No. 3055.

United States District Court
E. D. Louisiana,
Baton Rouge Division.

Feb. 26, 1965.

Murphy W. Bell, Baton Rouge, La., for plaintiff.

Edward N. Engolio, Plaquemine, La., for defendants Lt. Clarence J. Cazes, Officer Lionel Stein, Officer Lester Haydel, Jr., Officer Samuel Savage, Chief of Police Dennis Songy.

William O. Templet, Middleton & Templet, Plaquemine, La., for defendant Offie Stewart.

WEST, District Judge.

Plaintiff brings this action for money damages, and includes therein a prayer for injunctive relief, alleging that his cause of action arises under Title 42 U.S.C.A. § 1983 and § 1985, and under the Civil Rights Act of 1964, Title 42 U.S.C.A. § 2000a et seq., and that this Court has jurisdiction under the provisions of Title 28 U.S.C.A. § 1331 and § 1343.

According to the complaint filed herein, plaintiff, a Negro, entered the Celebrity Lounge in Plaquemine, Louisiana, at about 2.30 a. m. on July 16, 1964, and ordered a drink. The Celebrity Lounge is a bar which dispenses alcoholic beverages to white patrons only.

There are no meals served therein, and this business establishment is in no way connected with any hotel, motel, or other public accommodation facility. It is purely and simply a privately owned and operated bar and lounge located in a small rural community in Louisiana. Plaintiff was informed by the manager or proprietor on duty at that time that they did not serve colored people in the Celebrity Lounge, and plaintiff was then requested to leave the premises. He refused to leave without being served, and "without being told the reason why he was asked to leave." (But his complaint clearly alleges that "Plaintiff was told that they 'do not serve colored people,' and asked plaintiff to leave.") Upon his refusal to leave, the manager on duty called one of the owners of the business, Mrs. Lydia Stewart, who immediately came to the lounge. She, as one of the owners, then requested the plaintiff to leave and he again refused. Mrs. Stewart then telephoned the local police, who shortly thereafter arrived at the scene. They conferred with Mrs. Stewart, who again, in the presence of the officers, requested the plaintiff to leave. She informed the plaintiff at that time that it was she, and not the police officers, who was requesting him to leave her premises. Upon his refusal to leave, he was placed under arrest, taken to the local jail, and charged with being drunk, disorderly, and disturbing the peace. He was brought before a local court later that same day, and released on the grounds that there was insufficient evidence to support the charges lodged against him. This suit then followed wherein plaintiff demands $100,000 damages from the defendant police officers, Clarence J. Cazes, Lionel Stein, Lester Haydel, Jr., Samuel Savage, and Chief Dennis Songy, and from the owners of the Celebrity Lounge, Mr. Offie Stewart and Mrs. Lydia Stewart. He further seeks an injunction enjoining all defendants "from engaging in any and all of the acts and conduct herein above set forth." All defendants filed motions to dismiss for lack of jurisdiction, and in the alternative, for failure to state a claim upon which relief can be granted. It is these motions which are presently before this Court.

Plaintiff bases his claim for relief on the allegations in his complaint that "At all times pertinent to this complaint the Celebrity Lounge, owned and operated by defendants Lydia and Offie Stewart, was [sic] public facility within the intentment [sic] of the Civil Rights Act of 1964, Title II, section 201(c) and section 201(d)," and that "This action arises under Title 42, U.S.C., sec. 1983, 1985, and this court has jurisdiction of this action under Title 28, U.S.C. 1331, and 1343." In oral argument and brief, plaintiff further contends that if the Celebrity Lounge is not covered under Sections 201(c) and 201(d) of the Act it is covered under Section 202 thereof.

Title 28 U.S.C. § 1331 provides:

"The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States."

Title 28 U.S.C. § 1343 provides:

"The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

"(1) To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42;

"(2) To recover damages from any person who fails to prevent or to aid in preventing any wrongs mentioned in section 1985 of Title 42 which he had knowledge were about to occur and power to prevent;

"(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation,

custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States:

"(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote."

Therefore, in order for this Court to have jurisdiction over this matter under Section 1331, the action must arise under the Constitution or laws of the United States, and in order for jurisdiction to vest under Section 1343, the action must arise as a result of (1) a conspiracy mentioned in Section 1985, or (2) a deprivation, under color of state law, statute, ordinance, regulation, custom, or usage, of some right, privilege, or immunity secured by the Constitution or laws of the United States, or (3) damages sustained by plaintiff which are recoverable under some Act of Congress providing for the protection of civil rights.

Thus, in order to determine whether or not this Court has jurisdiction over this matter, it is necessary to examine the statutes under which relief is sought.

Title 42 U.S.C. § 1983 provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state or territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress."

And Title 42 U.S.C. § 1985 provides, in pertinent part:

"(3) If two or more persons in any State or Territory conspire or go in disguise on the highway or in the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; * * * in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators."

The pertinent part of Section 201 of the Civil Rights Act of 1964, Title 42 U.S.C. § 2000a, provides:

"(a) All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin.

"(b) Each of the following establishments which serves the public is a place of public accommodation within the meaning of this subchapter if its operations affect commerce, or if discrimination or segregation by it is supported by State action:

"(1) any inn, hotel, motel, or other establishment which provides lodging to transient guests,

other than an establishment located within a building which contains not more than five rooms for rent or hire and which is actually occupied by the proprietor of such establishment as his residence;

"(2) any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises, including, but not limited to, any such facility located on the premises of any retail establishment; or any gasoline station;

"(3) any motion picture house, theater, concert hall, sports arena, stadium or other place of exhibition or entertainment; and

"(4) any establishment (A) (i) which is physically located within the premises of any establishment otherwise covered by this subsection, or (ii) within the premises of which is physically located any such covered establishment, and (B) which holds itself out as serving patrons of such covered establishment.

"(c) The operations of an establishment affect commerce within the meaning of this subchapter if (1) it is one of the establishments described in paragraph (1) of subsection (b) of this section; (2) in the case of an establishment described in paragraph (2) of subsection (b) of this section, it serves or offers to serve interstate travelers or a substantial portion of the food which it serves, or gasoline or other products which is sells, has moved in commerce; (3) in the case of an establishment described in paragraph (3) of subsection (b) of this section, it customarily presents films, performances, athletic teams, exhibitions, or other sources of entertainment which move in commerce; and (4) in the case of an establishment described in paragraph (4) of subsection (b) of this section, it is physically located within the premises of, or there is physically located within its premises, an establishment the operations of which affect commerce within the meaning of this subsection. For purposes of this section, 'commerce' means travel, trade, traffic, commerce, transportation, or communication among the several States, or between the District of Columbia and any State, or between any foreign country or any territory or possession and any State or the District of Columbia, or between points in the same State but through any other State or the District of Columbia or a foreign country.

"(d) Discrimination or segregation by an establishment is supported by State action within the meaning of this subchapter if such discrimination or segregation (1) is carried on under color of any law, statute, ordinance, or regulation; or (2) is carried on under color of any custom or usage required or enforced by officials of the State or political subdivision thereof; or (3) is required by action of the State or political subdivision thereof."

██ Accepting the facts as alleged by the plaintiff in his complaint to be true, it must be concluded that he has no claim against Mr. or Mrs. Stewart, the owners and operators of the Celebrity Lounge, which could be cognizable by this Court. First of all, it is clear from a reading of Section 201 of the Civil Rights Act of 1964 that the Celebrity Lounge is not a place of public accommodation as defined therein. Section 201 specifically enumerates the establishments that are classified as places of public accommodation, and a cocktail lounge or barroom, separate and apart from and in no way connected with one of the specifically enumerated places of public accommodation is simply not included. But plaintiff argues that Section 202 of the Civil Rights Act of 1964, Title 42 U.S.C. § 2000a-1, does include the Celebrity Lounge because of the fact that there is, in fact, an ordinance in effect

in the Town of Plaquemine, Louisiana, which makes it unlawful for any person to sell spirituous, vinous or malt liquor of alcoholic content of more than 3.2 per cent by volume for consumption on the same premises to persons of the white or Caucasian race and persons of the black or Negro race.

Section 202 of the Act, 42 U.S.C. § 2000a–1, reads as follows:

"All persons shall be entitled to be free, at any establishment or place, from discrimination or segregation of any kind on the ground of race, color, religion, or national origin, if such discrimination or segregation is or purports to be required by any law, statute, ordinance, regulation, rule, or order of a State or any agency or political subdivision thereof."

The thrust of plaintiff's argument is that under Section 202, the mere fact that segregation in certain types of establishments, even though not specifically covered by Section 201, is required by state or local law automatically and conclusively renders segregation in all such establishments illegal.

At first blush, this section would seem to bear out plaintiff's contention. But a closer examination of the Civil Rights Act of 1964, and a more considered evaluation of the rights sought to be protected thereby, lead inevitably to a contrary conclusion.

Section 201 of the Act prohibits discrimination or segregation on the ground of race, color, religion, or national origin in all of the establishments enumerated therein, whether such discretion or segregation is practiced individually, pursuant to State action, or by any other means or for any other reason whatsoever. That section simply prohibits completely any and all discrimination or segregation on the grounds of race, color, religion, or national origin, in all of the establishments enumerated therein and covered hereby.

Section 202 is obviously intended to cover situations where the establishment or place involved is not covered by Section 201, but where the owner or proprietor is nevertheless forced by some law, statute, ordinance, regulation, rule or order of the state or some agency or political subdivision thereof to maintain segregation on the premises whether he personally wants to or not. Thus, under Section 202, if discrimination or segregation is practiced because it is required by some law, statute, ordinance, regulation, rule, or order of the state or of some agency or political subdivision thereof, and not by the will of an individual, freely exercised without regard to such law, statute, ordinance, regulation, rule or order, then, in that event, such discrimination or segregation practiced for that reason alone, is declared by Section 202 to be illegal. Section 202 does not purport to declare it illegal for an individual, on his own initiative, to discriminate against another individual, or against a class of individuals, or to insist upon segregation on his premises, when his premises are not, in fact, covered by Section 201 of the Act. Discrimination or segregation on such premises or in such establishments is only illegal under Section 202 when it is practiced, not because the owner or proprietor wishes to do so on an individual basis, but because he is forced by law to do so even though he prefers not to. In other words, it is segregation on account of race, color, religion or national origin, practiced only because of the compulsion of state or local law, that Section 202 seeks to prohibit. Should a proprietor wish to integrate his establishment, even though it is not one covered by Section 201, he may do so with immunity from state prosecution under any local law or ordinance prohibiting such integration because of the fact that under Article VI of the United States Constitution, commonly referred to as the Supremacy Clause, Section 202 now takes precedence over and nullifies all conflicting state or local laws or ordinances. That is all Section 202 is designed to accomplish. It simply cannot do more. To interpret Section 202 in any other man-

ner would be to sanction the most invidious kind of discrimination. As the plaintiff interprets Section 202, it would operate to discriminate against an individual's right to discriminate. It would, in effect, prevent an individual from exercising his right to discriminate against other individuals simply because a state or local law or ordinance required discrimination and segregation even though the state law so requiring discrimination or segregation is entirely ineffective and inoperative due to a superior and superseding federal law (Section 202) to the contrary. An individual has a right to discriminate against other individuals even though his actions may be thought by some to be morally wrong. The only discrimination prohibited by law is that discrimination practiced under compulsion of state action, or that discrimination which, by the Civil Rights Act of 1964, has been declared to constitute a burden upon interstate commerce. There is obviously no connection between interstate commerce and Section 202, and hence, if there is any validity at all to Section 202, which is somewhat doubtful because of the apparent unlimited and undefined scope of its operation, it must, of necessity, be directed against discrimination practiced only under compulsion of state law.

In Eaton v. Grubbs, 216 F.Supp. 465, E.D.N.C. (1963), the Court, in referring to prior pronouncements of the United States Supreme Court, said:

"'It is clear, as it always has been since the Civil Rights Cases, supra, [109 U.S. 3, 3 S.Ct. 18, 27 L. Ed. 835] that "individual invasion of individual rights is not the subject-matter of the amendment" * * * and that private conduct abridging individual rights does no violence to the Equal Protection Clause unless to some significant extent the State in any of its manifestations has been found to have become involved in it.' Burton v. Wilmington Parking Authority, 1961, 365 U.S. 715, 722, 81 S.Ct. 856, 860, 6 L.Ed.2d

45; Shelley v. Kraemer, 1948, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161.''

Then, the United States Court of Appeals for the Fourth Circuit, also referring to prior Supreme Court pronouncements, said in Williams v. Howard Johnson's Restaurant, 4th Cir. (1959), 268 F.2d 845, 846:

"The Court pointed out that the Fourteenth Amendment was prohibitory upon the states only, so as to invalidate all state statutes which abridge the privileges and immunities of citizens of the United States or deprive them of life, liberty or property without due process of law, or deny to any person the equal protection of the laws; but that the amendment did not invest Congress with power to legislate upon the action of individuals, which are within the domain of state legislation."

And in Peterson v. City of Greenville, South Carolina, 373 U.S. 244, 83 S.Ct. 1119, 10 L.Ed.2d 323 (1963), the United States Supreme Court declared:

"The evidence in this case establishes beyond doubt that the Kress management's decision to exclude petitioners from the lunch counter was made because they were Negroes. It cannot be disputed that under our decisions 'private conduct abridging individual rights does no violence to the Equal Protection Clause unless to some significant extent the State in any of its manifestations has been found to have become involved in it.' Burton v. Wilmington Parking Authority, 365 U.S. 715, 722, 81 S.Ct. 856, 860, 6 L.Ed.2d 45; Turner v. City of Memphis, 369 U.S. 350, 82 S.Ct. 805, 7 L.Ed.2d 762.

This same principle of law has been recognized in Seeley v. Brotherhood of Painters, Decorators, and Paper Hangers of America et al., 308 F.2d 52 (5th Cir.) (1962); Barthe et al. v. City of New Orleans et al., 219 F.Supp. 788 (E.D.La. 1963), Aff. 376 U.S. 189, 84 S.Ct. 636, 11 L.Ed.2d 602.

When an individual, on his own volition, acting separately and apart from any state or local law or ordinance, and for reasons of his own, no matter how right or wrong those reasons may be, discriminates against another individual, no federally protected right has been violated. This is now and always has been the law. Section 202 of the Civil Rights Act of 1964 in no way altered or changed this well established principle of law. Whether or not there was, in this case, a local ordinance in effect which was in conflict with Section 202 is of no moment. The facts, as clearly stated by the plaintiff in his complaint, show conclusively that he was denied service in the Celebrity Lounge not because of the compulsion of any state or local law or ordinance, but because the owners thereof did not choose to serve Negroes in their establishment. And since the Celebrity Lounge was not an establishment covered by Section 201 of the Act, the owners of Celebrity Lounge had a perfect right, under the law, to act as they did. Hence, plaintiff states no claim against the owners of the Celebrity Lounge, Offie and Lydia Stewart, upon which relief can be granted insofar as an action under the Civil Rights Act of 1964 is concerned. And of course, even if it had been found that the plaintiff was entitled to some relief under the Civil Rights Act of 1964, he obviously had no claim for money damages, as none are provided for under that Act.

But plaintiff also contends that he is entitled to recover from the Stewarts under the provisions of 42 U. S.C. § 1983 and § 1985. In order for there to be recovery against the Stewarts under Section 1983, plaintiff must prove that they, the Stewarts, were acting under color of some statute, ordinance, regulation, custom, or usage of the state. For the reasons hereinabove stated, the Court concludes that the plaintiff has, by the very allegations of his complaint, negated this requirement. Insofar as Section 1985 is concerned, both the United States Supreme Court and the United States Court of Appeals for the Fifth Circuit have declared that in order for a claimant to recover under that statute, the conspiracy complained of must have been a conspiracy pursuant to or under color of state action, rather than a conspiracy involving individual action only. Collins v. Hardyman, 1951, 341 U.S. 651, 71 S.Ct. 937, 95 L.Ed. 1253; Seeley v. Brotherhood of Painters, Decorators, and Paper Hangers of America et al., supra. This Court has already concluded that the actions of Mr. and Mrs. Stewart, in this case, were purely and simply individual actions and hence, not included in the prohibitions contained in 42 U.S.C. § 1985. For these reasons, plaintiff's complaint also fails to state a claim against the defendants, Mr. and Mrs. Stewart, upon which relief can be granted under either Sections 1983 or 1985 of Title 42 of the United States Code.

There is no doubt that a police officer, acting under color of state law, may be liable in damages if he deprives a person of rights guaranteed by the Constitution and laws of the United States. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Stringer v. Dilger, 10 Cir., 313 F.2d 536 (1963); Nesmith v. Alford, 5 Cir., 318 F.2d 110 (1963).

When Mrs. Stewart asked the plaintiff to leave her premises, which, under the circumstances of this case, she had a legal right to do, and when the plaintiff refused to comply with this request, the only logical and proper thing for her to do, instead of taking the law into her own hands, was to call upon the police to protect her in the lawful use of her property. When the police arrived they were careful, according to plaintiff's complaint, not, in their official capacity, to ask the plaintiff to leave. Instead, in their presence, Mrs. Stewart reiterated her request that the plaintiff leave, and made it clear that it was her own individual wish that he leave her premises. When the plaintiff again, for no lawful reason, refused to leave, it was the absolute duty of the police officers to see that he left in order that the owners of the Celebrity Lounge might be

protected in the peaceful use of their property.

The assistance rendered the owners of the Celebrity Lounge by the police officers in this case did not constitute state action designed to further the cause of segregation. Police assistance was rendered for the purpose of affording the owners of the Celebrity Lounge their constitutionally guaranteed right to the equal protection of the law in the peaceful use of their property. To hold that the calling upon the police by the owners of the Celebrity Lounge for aid and assistance in the exercise of their individual right to discriminate against other individuals, where such individual right to discriminate is in no way prohibited by law, constituted illegal state action would be a travesty on justice. If these defendants have a legal right to discriminate on an individual basis, and the law is clear that they do, then they, or course, are entitled to the equal protection of the law in the exercise of that right. To hold otherwise would be to grant a right without a remedy. To deny them access to police assistance and protection in the exercise of that right would be to deny them their constitutionally guaranteed right to the equal protection of the law. Surely we could not say in good faith that these defendants, as individuals, have a right to discriminate or to practice segregation if they wish, on an individual basis, on their own privately owned and operated premises, but that if someone attempts to interfere with that right, the only recourse they have, without involving illegal state action, is to take matters into their own hands and physically eject the person or persons intruding upon that right. But that is precisely what we would be saying if we were to hold that these defendants do have a legal right to discriminate on an individual basis, but that if, in the exercise of that right they have need for police protection, and do, in fact, request such protection, their right to discriminate on an individual basis is thus lost simply because they asked to be protected in the exercise of that right. Surely this cannot be the law. Thus, in forcing the plaintiff to leave the premises, the police officers who are defendants herein violated no federally protected right of the plaintiff. There is no right granted to the plaintiff to remain, unwanted, on the premises of the Celebrity Lounge, either by the Civil Rights Act of 1964 or by Title 42 U.S.C. § 1983 or § 1985. But plaintiff contends that his federally protected rights were violated when he was booked for being drunk, disorderly, and disturbing the peace, when in fact he was guilty of none of these offenses. Indeed, the record shows that he was, in fact, released from jail that same day for lack of evidence to sustain these charges. It may well be that he was improperly charged, and that he was unjustly committed to jail. He was apparently vindicated of those charges by the local tribunal. If his prosecution, or his attempted prosecution was malicious, he has recourse to the state court under state law for redress. Malicious prosecution is not a federal offense. His arrest by the police officers did not in any way violate a right protected under the Civil Rights Act of 1964, or under the provisions of Title 42, § 1983 or § 1985 of the United States Code. Unfortunately it is not uncommon for a person to be arrested, charged, and prosecuted for an offense of which he is not guilty. But surely a federal offense is not committed every time a defendant is found not guilty of the offense with which he is charged, nor every time a pending charge against a defendant is nolle prossed. The defendant officers in this case may have acted unwisely in preferring these particular charges against the plaintiff without sufficient evidence to support them. But they have neither committed a federal offense nor given rise to an action by the plaintiff for violation of a federally guaranteed civil right. Thus, plaintiff's complaint, on its face, fails to state a claim against the defendants, Clarence J. Cazes, Lionel Stein, Lester Haydel, Jr., Samuel Savage, and Chief Dennis Songy, upon which relief can

947

be granted. Consequently, since the plaintiff's cause of action, if any he has, does not arise under the Constitution or laws of the United States, and does not arise as a result of the conspiracy mentioned in 42 U.S.C. § 1985, or as a result of a deprivation, under color of state law, statute, ordinance, regulation, custom, or usage, of some right, privilege or immunity secured by the Constitution of the United States, and does not involve damages recoverable under some act of Congress providing for the protection of civil rights, this suit must be dismissed for the further reason that this Court lacks jurisdiction over this matter. For these reasons, defendants' motion to dismiss will be granted, and judgment will be entered accordingly.